EMERY CELLI BRINCKERHOFF & ABADY LLP

600 FIFTH AVENUE, 10TH FLOOR, NEW YORK, NEW YORK 10020

TEL: (212) 763-5000; FAX: (212) 763-5001
www.ecbalaw.com

January 17, 2020

**By ECF**
Hon. Vera M. Scanlon[1]
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      *Re: Steele-Warrick v. Microgenics Corp., et al.*, No. 19 Civ. 6558 (FB)(VMS)

Dear Judge Scanlon:

  This firm and Prisoner's Legal Services of New York (PLS) represent Plaintiff Nadya Steele-Warrick and the putative class. We write in response to Defendants' pre-motion letter seeking leave to move to dismiss the Complaint and strike class allegations, ECF No. 19.

  Ms. Steele-Warrick filed this action on behalf of thousands of putative class members who received false positive drug test results while incarcerated in New York state prisons in 2019. Defendants Microgenics and Thermo Fisher Scientific (TFS) are the companies responsible for manufacturing the faulty test machines, providing the machines to the New York State Department of Correction and Community Supervision (DOCCS), training, maintaining the machines, and ensuring that they produce accurate test results. Compl. ¶¶ 2-3. As a result of their negligence, Ms. Steele-Warrick and putative class members were subjected to severe and unjustified punishment, such as solitary confinement, keeplock, and loss of privileges or family visitation. Some class members even lost their conditional release dates, meaning that they were kept incarcerated beyond their scheduled release dates due to the false positives. *Id.* ¶ 6.

  Defendants are right about at least this much: Ms. Steele-Warrick *does* blame Defendants for DOCCS's predictable decision to discipline her and putative class members because Defendants' negligence directly caused those foreseeable injuries. The tests that Defendants provided were not "preliminary." Defendants knew that DOCCS would rely on their testing to discipline inmates because the contract with DOCCS required Microgenics to provide testimony about the testing in disciplinary proceedings. They must be held responsible.

***Plaintiff States a Claim Against Microgenics***

  As Defendants concede, New York law expressly recognizes a claim for negligence arising out of false positive drug test results. In *Landon v. Kroll Lab. Specialists, Inc.*, 977 N.Y.S.2d 676, 679-80 (2013), the New York Court of Appeals held that a drug testing laboratory may be found negligent for "fail[ing] to adhere to professionally accepted testing standards and, consequently, releas[ing] a report finding that the plaintiff had tested positive for

---

[1] On January 15, 2020, the parties consented to Judge Scanlon for all proceedings. ECF No. 21.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

THC." *Landon* is nearly indistinguishable from this case. The plaintiff in *Landon* received his false positive result while on probation; the lab had a contract with the County to provide drug testing services; and the County relied on the false positive result to extend the plaintiff's probation. *See generally id.* at 677-79. The court found that the lab had a duty of care to the plaintiff arising from its duty "to avoid harm to others [that] is distinct from the contractual duty of performance." *Id.* at 679. The court also relied on "the strong policy-based considerations that counsel in favor of finding that Kroll owed a duty," including that the laboratory was "*in the best position to prevent false positive results*." *Id.* (emphasis added). Here, as in *Landon*, Defendants were best positioned to prevent the false positive test results suffered by Ms. Steele-Warrick and putative class members. Microgenics has contracted with DOCCS "to provide Indiko Plus urinalysis analyzers at 52 DOCCS facilities, and to install, maintain, and train DOCCS employees on those machines." Compl. ¶ 9. They controlled the equipment and the process.

Defendants' argument that *Landon* does not apply because plaintiff "does not contend that Microgenics is a laboratory or that it conducted her drug screen," ECF No. 19 at 2, is hair-splitting. The Complaint alleges that Defendants were responsible for ensuring the accuracy of her drug test result, just as the lab was responsible in *Landon*. *See* Compl. ¶ 16 ("Microgenics is responsible for ensuring that the Indiko Plus machines in DOCCS's facilities run properly and provide accurate results"). Besides, there is no outside laboratory here because Defendants' Indiko Plus urinalysis analyzers are automated benchtop systems that conduct drug tests at DOCCS sites. Compl. ¶ 14. Defendants' machines *did* conduct Plaintiff's drug screen. They are the equivalent of a lab. And contrary to Defendants' assertion that no court has found that a drug-screen-equipment supplier may be liable for false positive test results, a federal court decision issued just last week holds exactly that. *See Amig v. Cty. of Juniata, et al.*, No. 19 Civ. 408, 2020 WL 102998 (M.D. Pa. Jan. 8, 2020) (declining to dismiss a complaint filed against the "manufacture[r of] the urine drug test administered to Plaintiff" while incarcerated.).[2]

Defendants' argument that *Pasternack v. Laboratory Corp. of America Holdings*, 27 N.Y. 3d 817 (2016) precludes Plaintiff's claim is equally misplaced. *Pasternack* holds that *Landon* does not create a negligence tort based solely on a laboratory's "violation of ministerial federal regulations and guidelines unrelated to scientific integrity," such as "federal regulations and guidelines unrelated to the actual performance of scientific testing of the biological sample." *Id.* at 826. Plaintiff does not allege negligence because Defendants failed to adhere to administrative guidelines. She alleges negligence because Defendants' drug-testing machines failed to *test accurately*. *Pasternack* has nothing to do with this case.

Plaintiff has also adequately alleged that Defendants breached their duty by "failing to ensure that the Indiko Plus urinalysis analyzers yielded accurate and reliable test results." Compl. ¶ 77. Defendants—not Plaintiff—know precisely the nature of their errors, and Plaintiff will seek this information during discovery. Plaintiff is not required to allege specific defects in the machines or services because she does not assert a claim for a design defect. Plaintiff's allegations handily satisfy the pleading standards of Fed. R. Civ. P. 8(a).

---

[2] *Landon* notes that its ruling is "in keeping with that of several other jurisdictions" and cites multiple decisions finding liability in nearly identical contexts. *Landon*, 122 N.Y.3d at 7 (citing cases). *See, also, e.g.*, *Quisenberry v. Compass Vision, Inc.*, 168 F. Supp. 2d 1223 (S.D. Cal. 2007) ("We cannot imagine a more foreseeable harm than the harm that may result from inaccurate laboratory testing of individuals").

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 3

*Plaintiff States a Claim Against Thermo Fisher Scientific*

Plaintiff has sufficiently pled her claims against TFS. Defendants' rely on *McCarthy v. Olin Corp.*, 119 F. 3d 148, 155 (2d Cir. 1997), to argue that Plaintiff "must allege that the [product] was unreasonably dangerous for its intended use," but that standard applies to claims for design defects. Defendants omit the first part of the quoted sentence, which states: "*To state a cause of action for a design defect*, plaintiffs must allege that the [product] was unreasonably dangerous for its intended use." *McCarthy*, 119 F. 3d at 155 (emphasis added). Plaintiff has not yet asserted a claim for design defect; her only claim is for ordinary negligence.

In any event, Defendants cannot seriously contend that it is not "unreasonably dangerous" to have defective drug test machines in state correctional facilities. For example, after receiving a false positive, some class members stopped taking their medication—including psychiatric medication—for fear that it would trigger another false positive. This is extremely dangerous for all the reasons one can imagine. The increased number of false positive results could also cause overcrowding in solitary confinement units, again creating safety risks. The Complaint contains several allegations regarding the dangerous consequences of Defendants' negligence. *See, e.g.*, Compl. 6, 40-41, 48. Plaintiff's claims against TFS must remain.

*Plaintiff's Class Allegations Are Proper*

There is no basis for striking class allegations at this early stage of the case. First, Plaintiffs have properly alleged a class of "all persons who obtained positive testing results." There is currently no evidence to suggest that anyone in the class obtained a "true" positive result. To the contrary, the only evidence on this issue so far is DOCCS's decision to reverse *all positive results* for Suboxone/Buprenorphine in 2019—a fact Defendants do not dispute. While discovery will no doubt reveal a sharper picture of what happened and why, the fact that DOCCS vacated *every* such test result is powerful evidence of uniformity amongst absent class members. The striking of class allegations is disfavored for a reason. Only in rare cases can a question like predominance be conclusively determined on a pleading. This is not such a case.

Second, the common question of liability and certain categories of damages subject to class-wide resolution predominate. Based on the pleading, there will be no need to examine individual issues, such as "how [putative class members'] drug screens were performed" or "the medications and other substances [they] were taking at the time." These issues are not relevant to Defendants' failure to provide accurate urinalysis machines and/or appropriate training, guidance, protocols and materials for testing. There is no evidence to suggest that the false positive results at issue in this case had anything to do with putative class members' actions. And to the extent that there are some individual issues pertaining to certain categories of damages, but not all, the Second Circuit has held that common issues concerning liability alone are sufficient for class treatment under Rule 23(b)(3). *In re Nassau Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006). This is not a reason to strike class allegations, either.

                Respectfully Submitted,

                /s Alanna Kaufman

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

                                        Alanna Kaufman
                                        Matthew D. Brinckerhoff

                                        EMERY CELLI BRINCKERHOFF
                                        & ABADY LLP


                                        Karen L. Murtaugh
                                        Michael Cassidy
                                        David Bentivegna
                                        Betsy Hutchings
                                        Nicole Jolicoeur

                                        PRISONERS LEGAL SERVICES OF
                                        NEW YORK