UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NADEZDA STEELE-WARRICK,

individually and on behalf of all others similarly situated,

                Plaintiff,

              -*against*-

MICROGENICS CORPORATION and THERMO FISHER SCIENTIFIC, INC.,

                Defendants.

No. 19 Civ. 06558 (VMS)

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT THERMO FISHER SCIENTIFIC'S MOTION TO DISMISS**

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

Prisoners' Legal Services of New York
41 State Street, Suite M112
Albany, New York 12207

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

RELEVANT FACTS ..............................................................................................................1

    I.     THERMO FISHER SCIENTIFIC WAS DIRECTLY INVOLVED IN PROCURING THE CONTRACT AND REPRESENTED THAT IT WOULD PROVIDE SERVICES TO DOCCS ......................................................................1

    II.    DEFENDANT THERMO FISHER SCIENTIFIC *IN FACT* PROVIDED SERVICES TO DOCCS ...................................................................................3

ARGUMENT ..........................................................................................................................4

    I.     PLAINTIFF ALLEGES THAT THERMO FISHER SCIENTIFIC IS LIABLE FOR ITS OWN NEGLIGENCE ................................................................4

    II.    PLAINTIFF DID NOT ENGAGE IN ANY IMPROPER GROUP PLEADING ............................................................................................................6

CONCLUSION .......................................................................................................................8

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ........................................................................................ 7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    962 F. Supp. 2d 606 (S.D.N.Y. 2013) ....................................................................... 7

*In re Parmalat Sec. Litig.*,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005 ......................................................................... 6

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) ...................................................................................... 5

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020) .................................................................................. 5, 7

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ...................................................................................... 5

*Sabol v. Bayer Healthcare Pharm., Inc.*,
    2020 WL 705170 (S.D.N.Y. Feb. 12, 2020) ............................................................. 8

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) ...................................................................................... 5

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004) ........................................................................................ 8

Plaintiff submits this memorandum of law in opposition to Defendant Thermo Fisher Scientific's Motion to Dismiss Plaintiff's First Amended Complaint.

## PRELIMINARY STATEMENT

Thermo Fisher Scientific's motion to dismiss rises and falls with its argument that Plaintiff is seeking to hold Thermo Fisher Scientific liable by "assert[ing] claims against a parent corporation based on a subsidiary's actions," without "plead[ing] facts justifying veil piercing." Memorandum of Law in Support of Defendant Thermo Fisher Scientific's Motion to Dismiss ("Thermo Fisher Br.") at 5. There is a fatal flaw to this argument: Plaintiff does not allege that Thermo Fisher Scientific is vicariously liable for Microgenics's actions. Rather, Plaintiff pleads ample facts showing that Thermo Fisher Scientific is *directly* liable to Plaintiff and those similarly situated based on its own acts and omissions. Thermo Fisher Scientific's motion misses the point entirely.

## RELEVANT FACTS[1]

### I. THERMO FISHER SCIENTIFIC WAS DIRECTLY INVOLVED IN PROCURING THE CONTRACT AND REPRESENTED THAT IT WOULD PROVIDE SERVICES TO DOCCS

In May 2018, DOCCS issued IFB 2018-06 seeking "reagent rentals of bench top urinalysis analyzer services to be used in its 52 correctional facilities for inmates." Compl. ¶ 13. "Defendants submitted a bid in response to the Invitation for Bids on behalf of 'Microgenics Corporation Part of Thermo Fisher Scientific.'" *Id.* ¶ 14. As the Complaint alleges—and Defendants' own documents confirm—Thermo Fisher Scientific played a key role in the bidding process and procurement of the contract.

---

[1] For convenience, Plaintiff only includes facts relevant to Thermo Fisher Scientific's Motion to Dismiss. Plaintiff includes a fulsome account in her opposition to Microgenics's Motion to Dismiss. Capitalized terms, abbreviations, and acronyms in this brief have meanings identical to those defined in Plaintiff's opposition to Microgenics's motion.

1

To start, "Thermo Fisher Scientific markets itself as the manufacturer of the Indiko Plus urinalysis analyzers, as well as the owner of the assays used to conduct drug testing on those machines." Compl. ¶ 10. "Thermo Fisher Scientific is responsible for all FDA submissions made regarding the Indiko Plus urinalysis analyzers and assays used to conduct drug testing on those machines." *Id*. ¶ 10. The Complaint alleges that the "bid was submitted on Thermo Scientific letterhead." *Id*. ¶ 16. The web address identified on the bid was www.thermoscientific.com/diagnostics, *id*. ¶ 17, and the two individuals identified as "authorized to negotiate" regarding "all matters pertaining to this bid were sales representatives with email addresses ending with '@thermofisher.com,' *id*. ¶ 18. Further, the bid included numerous pieces of literature regarding Thermo Fisher Scientific and its products, and the bidding company was identified as "Microgenics D/B/A – Doing Business As" Thermo Fisher Scientific. *Id.* ¶¶ 19-21.

The contractual documents submitted with Thermo Fisher Scientific's motion to dismiss bolster the Complaint's allegations that Thermo Fisher Scientific was directly involved in procuring the contract and providing services to DOCCS. In the first amendment to the contract, DOCCS confirms with Microgenics that "Thermo Fisher Scientific instructor[s]" would conduct site trainings. Amendment to Contract #CC161458, September 28, 2018 at 2, Exhibit 1 to Declaration of Nathan J. Marcusen in Support of Thermo Fisher Br. ("Marcusen Thermo. Fisher Decl., Ex. 1"). Similarly, documents supplied with the bid state that "Thermo Fisher can complete the 52-instrument install and training in a 3-month time frame agreed to with NYS DOCCS." Contractor's Bid, at 1, Marcusen Thermo Fisher Decl., Ex. 1, App'x H. The same document promises that "Microgenics shall provide testimony in administrative hearings" and

2

that DOCCS should "provide Thermo Fisher Scientific a notice as early as possible, with (if possible) any advance notice for these administrative hearings." *Id.* at 3.

## II. DEFENDANT THERMO FISHER SCIENTIFIC *IN FACT* PROVIDED SERVICES TO DOCCS

After promising to provide services to DOCCS, "[b]oth Microgenics and Thermo Fisher Scientific were responsible for providing services under the Contract, and both entities negligently provided such services, breaching their duty of care to Ms. Steele-Warrick and putative class members and causing them foreseeable harm." Compl. ¶ 31. The Complaint alleges that both Defendants, *inter alia*: (1) "negligently failed to train DOCCS employees on the applicable standards for the Indiko Plus urinalysis analyzers;" (2) "negligently testified at disciplinary hearings that the results from the Indiko Plus urinalysis analyzers could be relied on as a basis for disciplining incarcerated individuals, even though Defendants knew that the results were only preliminary screens;" and (3) "negligently failed to ensure that their products and services were used in accordance with applicable standards even though they had full control over the nature of the use." Compl. ¶¶ 37-39.

Again, the documentary evidence that Defendants have thus far produced in discovery readily confirms Plaintiff's allegations that Thermo Fisher Scientific provided significant, ongoing services to DOCCS. The two individuals identified by counsel for Defendants as having the most correspondence with DOCCS regarding the contract—Brenda Collum and Larry Wilkie, *see* Defendants' Letter Memorandum in Opposition to Motion for Discovery (Dkt. No. 35) at 3—use @thermofisher.com email addresses. Mr. Wilkie's signature block in emails does not reference Microgenics at all. PowerPoint decks provided to DOCCS on the issue of cross-reactivity in the tests were authored by Thermo Fisher Scientific, with no mention at all of Microgenics. Although it is not Plaintiff's burden to produce evidence to defeat

a motion to dismiss, the developing factual record confirms that Defendants cannot argue in good faith that Defendant Thermo Fisher Scientific was *not* involved in the actions giving rise to this Complaint.

The preliminary record also bolsters the Complaint's allegations that Thermo Fisher Scientific "is the manufacturer of the Indiko Plus urinalysis analyzer and the assays used in connection with that machine." Compl. ¶ 24. Microgenics's bid identifies the assays at issue as using "Thermo Fisher Drugs of abuse reagents." Contractor's Bid, Marcusen Thermo Fisher Decl., Ex. 1, App'x H, at 3.

Both Thermo Fisher Scientific and Microgenics provided products and services to DOCCS, and both are liable for their own negligent acts.[2]

## ARGUMENT

I.  **PLAINTIFF ALLEGES THAT THERMO FISHER SCIENTIFIC IS LIABLE FOR ITS OWN NEGLIGENCE**

Thermo Fisher Scientific's motion to dismiss relies on a false premise: that Plaintiff seeks to hold Thermo Fisher Scientific liable as the alter ego of Microgenics. Nowhere in the Complaint does Plaintiff premise her claim against Thermo Fisher Scientific on vicarious liability or abuse of the corporate form. She does not "assert claims against a parent corporation based on a subsidiary's actions." Thermo Fisher Br., at 5. Thus, Thermo Fisher Scientific's legal argument regarding the pleading standard for alter ego liability is irrelevant. *See* Thermo Fisher Br., at 4-5.

As is clear from the face of the Complaint, Plaintiff brings a claim against Thermo Fisher Scientific based on its *own* negligence that caused Plaintiff's harm. The

---

[2] Notably, DOCCS sued *both* Thermo Fisher Scientific and Microgenics for their failures to fulfill their contractual obligations. Compl. ¶ 50.

4

Complaint alleges that "[b]oth Microgenics and Thermo Fisher Scientific were responsible for providing services under the Contract, and both entities negligently provided such services, breaching their duty of care to Ms. Steele-Warrick and putative class members and causing them foreseeable harm." Compl. ¶ 31. In other words, Plaintiff pleads that Thermo Fisher Scientific, *in addition to* Microgenics, held itself out as providing the services at issue in this litigation, in fact provided those services, and thus is directly liable for negligence.

Thermo Fisher Scientific does not address Plaintiff's well-pleaded allegations of its negligence. Its only response is to argue that the urinalysis testing machines at issue were purportedly manufactured not by Thermo Fisher Scientific, but rather by a Finnish subsidiary, Thermo Fisher Oy.[3] Setting aside that it is inappropriate for Thermo Fisher Scientific to raise a factual issue at the motion to dismiss stage, *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) ("[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."), this argument does not counter Plaintiff's well-pleaded allegations that Thermo Fisher Scientific was directly involved and negligent by marketing the Indiko Plus as reliable, insufficiently training DOCCS personnel, and providing testimony at disciplinary hearings regarding the test's efficacy and accuracy. Further, Thermo Fisher Scientific does not dispute that it manufactured the assays used on the machines,

---

[3] Plaintiff notes that both Defendants have relied on evidence from outside the Complaint in their motions to dismiss, despite the fact that even judicially noticeable documents may only be accepted for limited purposes. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("If the court takes judicial notice, it does so in order 'to determine *what* statements [they] contained'—but '*again not for the truth of the matters asserted.*'") (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)) (emphasis and alterations in original); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008) (a court may "not consider the contents of those exhibits for their truth"). Nonetheless, even accepting Defendant Thermo Fisher Scientific's representation that Thermo Fisher Oy was the titular manufacturer of the Indiko Plus machine does not *ipso facto* exonerate Thermo Fisher Scientific from involvement in its design, creation, manufacturing, marketing, and supply of the testing system. Such matters are for discovery, not dismissal at the pleadings stage.

even if it did not manufacture the actual machinery.[4] Plaintiffs' allegations are more than enough to hold Thermo Fisher Scientific directly liable for the negligence that caused Plaintiff's harm.[5]

## II. PLAINTIFF DID NOT ENGAGE IN ANY IMPROPER GROUP PLEADING

Thermo Fisher Scientific faults Plaintiff for "resort[ing] to group pleading on the basis of Thermo Fisher's corporate relationship with Microgenics." Thermo Fisher Br., at 4. It argues that "Plaintiff has not averred facts suggesting any basis for finding Thermo Fisher liable under Microgenics's contract with DOCCS," Thermo Fisher Br., at 5, and faults Plaintiff for alleging that "DOCCS entered into a five-year contract . . . with ***Defendants***," "[t]he Contract required ***Defendants*** to conduct onsite training," and that "[t]he Contract required ***Defendants***' employees to testify at disciplinary hearings," Thermo Fisher Br., at 4 (emphasis in original). Thermo Fisher Scientific's argument fails for at least three reasons.

*First*, this is not a contract claim, and Plaintiff does not allege that Thermo Fisher Scientific is "liable under Microgenics's contract with DOCCS," Thermo Fisher Br., at 5. This is a negligence claim, and Plaintiff alleges that *both* Defendants owed her a duty based on products and services that *both* Defendants promised and then provided under the contract. Plaintiff alleges that the contract required ***Defendants*** to perform certain actions because that is what the contract documents provide. *See* Marcusen Thermo Fisher Decl. Ex. 1, App'x H at 1, 3 ("Thermo Fisher can complete the 52-instrument install and training in a 3-month time frame

---

[4] As noted *supra*, documents submitted to DOCCS as part of Microgenics's bid identify the assays at issue as using "Thermo Fisher Drugs of abuse reagents." Contractor's Bid, Marcusen Thermo Fisher Decl., Ex. 1, App'x H, at 3.

[5] Thermo Fisher Scientific's direct liability to Plaintiff and those similarly situated as her on the basis of Defendant's own acts is sufficient to defeat this motion. Defendant Thermo Fisher Scientific may of course be further liable based on any agency relationship it has with Defendant Microgenics. Plaintiff has not pleaded agency liability against Defendant Thermo Fisher Scientific, but notes that the factual record developed so far may also support such further basis of liability. *See In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 290 (S.D.N.Y. 2005) ("An agency relationship exists under New York law when there is agreement between the principal and the agent that the agent will act for the principal and the principal retains a degree of control over the agent.").

agreed to with NYS DOCCS"; DOCCS should "provide Thermo Fisher Scientific a notice as early as possible, with (if possible) any advance notice for these administrative hearings"). Whether Thermo Fisher Scientific was technically a party to the contract is irrelevant. Its liability does not depend upon its contractual relationship with DOCCS, but rather on its actions and representations.

*Second*, Thermo Fisher Scientific's argument is passing strange given that it accepts that "Microgenics does business under the name 'Thermo Fisher Scientific,'" and signed the contract as such. Thermo Fisher Br., at 5 (quoting Compl. ¶ 10). At the motion to dismiss stage, the court must "accept well pleaded factual assertions as true" and "draw all reasonable factual inferences in favor of the plaintiff." *Lynch*, 952 F. 3d at 76. It is a natural (and in fact *obvious*) inference that the parent company that supplied the products, expertise, letterhead, personnel, and even its very name to the subsidiary that signed the contract is also liable for the harm caused pursuant to actions both entities took in fulfilling that contract. The exact nature of the division of labor between Microgenics and Thermo Fisher Scientific in their performance of this contract may be the subject of discovery, especially since such facts are uniquely within the possession of Defendants, but the facts as alleged by Plaintiff more than meet the low threshold of Rule 8 of the Federal Rules of Civil Procedure. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 617 (S.D.N.Y. 2013) ("[I]t is well established that pleading requirements are relaxed where proof of a claim 'involve[s] facts solely within the defendant's knowledge.'") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007) (internal modifications in original).

*Third*, to the extent Defendant Thermo Fisher Scientific argues that Plaintiff's pleading is improper because she did not specifically parse out which of her allegations applies

to which Defendant, it is wrong again. The Complaint includes numerous specific allegations pertaining only to Thermo Fisher Scientific. *See* Compl. ¶¶ 10, 16-18. And, in any event, the Second Circuit has expressly held that "Rule 8 does not necessarily require . . . that the complaint separate out claims against individual defendants." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004). The case Thermo Fisher Scientific cites accords. *See Sabol v. Bayer Healthcare Pharm., Inc.*, 2020 WL 705170, at *10 n.11 (S.D.N.Y. Feb. 12, 2020) (rejecting argument that plaintiff "fails to state a claim against" a corporate parent because plaintiff "does not make any allegations specific to that entity apart from its 'manufacturing, testing, licensing, design, marketing, selling, distributing, and advertising'" of the product) (cited in Thermo Fisher Br., at 5).

## CONCLUSION

Plaintiff has more than adequately alleged facts raising the reasonable inference that Thermo Fisher Scientific negligently caused harm to her and others similarly situated. Thermo Fisher Scientific's motion to dismiss must be denied.

Dated: May 22, 2020

New York, New York

        EMERY CELLI BRINCKERHOFF
        & ABADY LLP

        /s/ Matthew D. Brinckerhoff
        Matthew D. Brinckerhoff
        Ananda V. Burra

        600 Fifth Avenue, 10th Floor
        New York, New York 10020
        (212) 763-5000

        PRISONERS' LEGAL SERVICES
        OF NEW YORK

        Karen L. Murtagh
        Michael Cassidy
        David Bentivegna
        Nicole Jolicouer

        41 State Street, Suite M112
        Albany, New York 12207

        KAUFMAN LIEB LEBOWITZ &
        FRICK

        Alanna Kaufman

        10 E. 40th Street, Suite 3307
        New York, NY 10016

        *Attorneys for Plaintiff and the*
        *Putative Class*