# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NADEZDA STEELE-WARRICK, individually and on behalf of all others similarly situated,<br><br>       Plaintiff<br>vs.<br><br>MICROGENICS CORPORATION AND THERMO FISHER SCIENTIFIC INC.,<br><br>       Defendants | Hon. Vera M. Scanlon<br>CASE 1:19-cv-06558-VMS<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THERMO FISHER SCIENTIFIC INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT AND STRIKE CLASS ALLEGATIONS** |

  Plaintiff's opposition to Thermo Fisher Scientific Inc.'s motion to dismiss[1] collapses to a case of deliberately mistaken identity. Thermo Fisher Scientific Inc. ("TFSI") is the indirect parent of Co-defendant Microgenics Corporation ("Microgenics"), which does business as "Thermo Fisher Scientific"—not as "Thermo Fisher Scientific Inc.," but "Thermo Fisher Scientific." Plaintiff knows this. She alleged as much in her Complaint. Compl. [ECF 31] ¶ 10. Yet throughout her opposition brief, Plaintiff repeatedly conflates TFSI with Microgenics d/b/a Thermo Fisher Scientific in a fruitless effort to justify joining TFSI to a case about Microgenics' contract to sell urinalysis products and services to the New York Department of Corrections and Community Supervision ("DOCCS").

  For instance, Plaintiff contends that TFSI submitted a successful bid to supply urinalysis products and services to DOCCS. Pl.'s Opp'n 1. But the bid to which she refers unequivocally identifies the *sole* bidder as "Microgenics Corporation." The bid never mentions TFSI.

---

[1] Thermo Fisher Scientific Inc. joins in Co-defendant Microgenics Corporation's separate motion to dismiss.

Likewise, Plaintiff contends that TFSI "promis[ed] to provide services" under Microgenics' contract to supply urinalysis products and services to DOCCS. Pl.'s Opp'n 3. But the contract unequivocally identifies the *sole* contractor as "Microgenics Corporation." And as with the bid, the contract never mentions TFSI.

Cherry-picking from the contract, Plaintiff notes that the agreement occasionally uses the business name "Thermo Fisher Scientific" when referring to services the contractor will provide, and she insists those references somehow establish that TFSI incurred obligations under the contract, even though it is not a party to the agreement. But as noted, for the purposes of the contract, "Thermo Fisher Scientific" is the name under which Microgenics conducts business—a fact expressly memorialized in the contract. Thus, as used in the contract, the business name "Thermo Fisher Scientific" refers not to TFSI, but to Microgenics. Plaintiff's argument to the contrary is unfounded and unavailing.

Plaintiff's Complaint leaves no doubt that this case is about Plaintiff's criticisms of the performance of commitments under Microgenics' contract with DOCCS. TFSI did not submit a bid for that contract, was not a party to that contract, and did not incur obligations under that contract. TFSI's only plausibly alleged involvement was as Microgenics' indirect parent company. But given that Plaintiff has disclaimed veil piercing, Pl.'s Opp'n 4, TFSI's indirect ownership of Microgenics does not support a viable claim for relief. For these reasons, as well as those set forth in Microgenics' motion to dismiss, the Complaint fails to state a claim and should be dismissed.

**<u>Argument</u>**

I. **Plaintiff has not stated a claim against TFSI for negligent performance of a contractual undertaking because TFSI owed no contractual obligations to DOCCS.**

Plaintiff's negligence claim is founded on her contention that TFSI *and* Microgenics assumed tort duties by entering into a contract with DOCCS to provide urinalysis products and

services for correctional facilities across New York. *E.g.* Compl. [ECF 31] ¶¶ 22, 31. But as demonstrated in its opening brief, TFSI was not a party to the supply contract between Microgenics and DOCCS, and thus the contract could not give rise to any tort duties as to TFSI. *See* Mem. in Support of TFSI's Mot. to Dismiss 2.

Rather than concede the obvious, Plaintiff strains to argue that TFSI somehow incurred obligations under the contract despite not being a party to the contract. Her position, apparently, is that even though TFSI was not a signatory, it assumed duties under the contract through alleged involvement in the bid process and alleged representations that it would provide some of the services Microgenics agreed to supply to DOCCS. Pl.'s Opp'n 1–2. But the contract's plain language contradicts Plaintiff's convoluted theory and establishes that TFSI was not a party to the contract and incurred no obligations under the contract.

### A. The Court need not accept as true Plaintiff's groundless allegations that contradict the contract's express terms.

Plaintiff relies largely on her *allegations* about the terms of the contract and the bid for the contract, as opposed to the documents' actual terms. *E.g.*, Pl.'s Opp'n 5 (noting that the Complaint alleges that both Microgenics and TFSI were responsible for providing services under the contract). But the contract and bid are in the record (without objection), and their express terms—not Plaintiff's erroneous allegations about their terms—should control the analysis. *See, e.g., Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3, ex rel. HSBC Bank USA, Nat'l Ass'n*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014) (explaining that if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true" (internal quotations marks and citation omitted)); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001)

3

(noting that a court need not accept allegations "contradicted either by . . . documents upon which [the] pleadings rely, or by facts of which the court may take judicial notice" (citation omitted)).

### B. The supply contract establishes that TFSI was not a party to Microgenics' bid to supply urinalysis products and services to DOCCS or to the resulting contract and that it did not incur any rights or obligations under the contract.

Under New York law, contract interpretation is a threshold question of law to be determined by the court and is "suitable for disposition on a motion to dismiss." *Citibank, N.A. v. Jacobsen*, No. 19-CV-959 (DAB)(JLC), 2020 WL 772497, at *7 (S.D.N.Y. Feb. 18, 2020) (citation omitted); *accord Kohl's Dep't Stores, Inc. v. Rongrant Assocs., LLC*, No. 04-CV-4907 (NGG)(MDG), 2005 WL 1263613, at *1 (E.D.N.Y. May 27, 2005) (citation omitted). And where, as here, contract terms are unambiguous, the court is "'required to give effect to the contract as written.'" *U.S. Trust Co. of N.Y. v. Jenner*, 168 F.3d 630, 632 (2d Cir. 1999) (internal quotation marks and citation omitted).

Plaintiff's contention that TFSI incurred obligations under Microgenics' contract with DOCCS does not withstand even passing scrutiny. She argues that TFSI jointly submitted a bid to supply urinalysis products and services to DOCCS. Pl.'s Opp'n 1. But Microgenics' bid, which is incorporated into the resulting contract, includes a bid signature page that identifies the "Legal Business Name of the Company Bidding" as "Microgenics Corporation." Contract No. CC161456 [Ex. 1 to Marcusen Decl. in Support of TFSI Mot. to Dismiss ("Marcusen TFSI Decl.")], App. H. The bid signature page also acknowledges that Microgenics does business under the name "Thermo Fisher Scientific" (*not* Thermo Fisher Scientific Inc.) *Id.* The bid signature page does *not* mention TFSI, nor is TFSI mentioned anywhere in the bid.

Consistent with the bid, the integrated contract executed by Microgenics and DOCCS identifies the "Contractor" as "Microgenics Corporation." Contract No. CC161456 [Ex. 1 to

4

Marcusen TFSI Decl.] at 1. The contract prohibits subcontracting without approval from DOCCS. *Id.* at 2. It also provides that Microgenics "shall, at all times during the AGREEMENT term remain responsible." *Id.* at 5. The lengthy contract runs approximately 150 pages, but it never mentions TFSI.

Resisting the bid's and the contract's plain terms, Plaintiff insists that TFSI was either a party to the contract or otherwise incurred responsibilities under the contract because the bid and the contract occasionally refer to the bidder or contractor as "Thermo Fisher Scientific" (sometimes shortened to "Thermo Fisher"). Pl.'s Opp'n 2. But in the context of both the bid and the contract, Thermo Fisher Scientific unambiguously refers to Microgenics, not to TFSI. As noted, the contract acknowledges that Microgenics does business under the name "Thermo Fisher Scientific." Contract No. CC161456 [Ex. 1], App. H. And it is axiomatic that a doing-business-as designation refers, not to a different legal entity, but to a different name under which a single legal entity does business. *See, e.g.*, *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb. 1977) (explaining that "doing business as" is "merely descriptive of the person or corporation who does business under some other name" and does not create an entity distinct from the person or corporation operating the business). Thus, for the purposes of Microgenics' contract with DOCCS, Thermo Fisher Scientific means Microgenics. In fact, Plaintiff admits as much in her Complaint, despite the protestations in her brief. *See* Compl. ¶ 10 ("For purposes of the contract with DOCCS, Microgenics is identified as doing business as Thermo Fisher Scientific.").

The conclusion that Microgenics and Thermo Fisher Scientific refer to the same entity is correct for an additional reason. When interpreting a contract, a court should avoid an interpretation that would render an express term meaningless. Yet by ignoring the identity of meaning created by the contract's doing-business-as acknowledgement, Plaintiff would strip

5

Thermo Fisher Scientific of any meaning within the context of the contract. Plaintiff labors under the misapprehension that if Thermo Fisher Scientific does not refer to Microgenics, it necessarily refers to TFSI. In fact, however, there are dozens of legal entities in the Thermo Fisher Scientific family with the words "Thermo Fisher Scientific" in their legal names. *See* Thermo Fisher Form 10-K, Ex. 21: Subsidiaries of the Registrant, https://www.sec.gov/Archives/edgar/data/97745/000009774520000009/tmo201910kex21.htm (last accessed June 7, 2020). For example, Microgenics' direct parent company is nonparty Thermo Fisher Scientific BV & Co. KG, *id.*, and the entity that manufacturers the immunoassay used to screen Plaintiff for buprenorphine is nonparty Thermo Fisher Scientific Oy, *see* 510(k) Substantial Equivalence Determination Decision Summary, 510(k) Number k110035, https://www.accessdata.fda.gov/cdrh_docs/reviews/K110035.pdf [Ex. 2 to Marcusen TFSI Decl.] (last accessed June 7, 2020) (identifying Thermo Fisher Scientific Oy as the 510(k) applicant). Thus, by ignoring the contract's express acknowledgment that Microgenics does business as Thermo Fisher Scientific, Plaintiff's interpretation renders meaningless the contract's references to Thermo Fisher Scientific. Such an interpretation is improper and should be rejected. Under the contract's plain language, any usage of Thermo Fisher Scientific unambiguously refers to Microgenics. And it follows that TFSI was not a party to the contract and incurred no obligations under the contract.

Strangely, Plaintiff contends that the contractual analysis whether TFSI was a party to the operative contract is irrelevant because "this is not a contract claim." Pl.'s Opp'n 6. But when a negligence claim is based on an alleged contractual undertaking, the existence and scope of the undertaking as set forth in the contract are relevant to the tort analysis. Here, Plaintiff claims that a tort duty in this case arose under the so-called "force of harm exception" set forth in *Espinal v. Melville Snow Constr.*, 773 N.E.2d 485 (N.Y. 2002). *See* Pl.'s Mem. in Opp'n to Microgenics'

6

Mot. to Dismiss 13. To apply that exception, a court must consider, among other things, whether the defendant launched a force of harm "while engaged affirmatively in discharging a contractual obligation." *Church ex. rel Smith v. Callanan Indus., Inc.*, 782 N.E.2d 50, 53 (N.Y. 2002). The exception expressly requires a finding that the defendant owed a contractual obligation, and therefore, the contract analysis is dispositive here even though Plaintiff is pursuing a claim sounding in tort.

In sum, TFSI did not bid for the urinalysis supply contract with DOCCS, is not a party to the contract, and did not incur any responsibilities or assume any duties under the contract. And because Plaintiff's negligence claim against TFSI is premised on tort duties supposedly arising from the contract, the claim is facially implausible and should be dismissed.

II. **Plaintiff has not plausibly alleged that TFSI gratuitously assumed tort duties through "actions and representations" regarding Microgenics' contract with DOCCS.**

Despite grounding her negligence claim on alleged contractual undertakings, Plaintiff seems to argue in the alternative that it simply doesn't matter whether TFSI incurred any obligations under Microgenics' contract with DOCCS. *See* Pl.'s Opp'n 7 ("Whether Thermo Fisher Scientific [Inc.] was technically a party to the contract is irrelevant."). She asserts that, regardless of its status under the contract, TFSI is liable for its "actions and representations." Pl.'s Opp'n 7. Her theory, apparently, is that TFSI gratuitously represented that it would perform certain aspects of Microgenics' contract with DOCCS and that it in fact did so. That theory suffers numerous facial defects, each of them fatal.

*First*, as to alleged representations, affirmative statements can, under the circumstances, give rise to claims for negligent misrepresentation, but Plaintiff has not attempted to plead—and could not possibly plead—the elements of such a claim, which include a special relationship between plaintiff and defendant and reasonable reliance. *E.g., Steinberg v. Armstrong Plumbing*

7

*& Heating, Inc.*, 153 A.D.3d 1379, 1380, 61 N.Y.S.3d 306, 307 (2d Dep't 2017) (identifying three elements: (i) the existence of a special or privity-like relationship imposing a duty to impart correct information, (ii) the information imparted was incorrect, and (iii) reasonable reliance).

*Second*, the representations to which Plaintiff refers, *see* Pl.'s Opp'n 7, are set forth in *Microgenics*' contract with DOCCS and thus are *Microgenics* representations, not TFSI representations.

*Third*, as explained above, the statements in the contract that mention Thermo Fisher Scientific do not contemplate TFSI providing services under the contract because, within the context of the contract, Thermo Fisher Scientific means Microgenics, not TFSI.

*Fourth*, insofar as Plaintiff contends that TFSI stepped into Microgenics' shoes and performed services it had no contractual obligation to perform, she has failed to adequately plead facts plausibly supporting that contention. The complaint does not identify any specific action that TFSI, as opposed to Microgenics, supposedly took in performance of Microgenics' contractual obligations. To the contrary, the Complaint groups Microgenics and TFSI together to allege, in conclusory fashion, that both negligently failed to train DOCCS employees, negligently testified at hearings, and negligently failed to ensure their products were used in accordance with applicable standards. *See* Pl.'s Opp'n 3 (citing allegations from Paragraphs 37–39 of the Complaint that lump the defendants together without any effort to delineate which defendant supposedly did what). Given that TFSI is not a party to the contract with DOCCS and incurred no obligations under the contract, Plaintiff's conclusory averments of negligent performance that lump Microgenics and TFSI together as a collective fail to give TFSI fair notice of the claims against it. *See Automated Transaction LLC v. N.Y. Cmty. Bank*, No. 12-CV-3070 (JS)(ARL), 2013 WL 992423, at *4 (E.D.N.Y. Mar. 13, 2013) ("Rule 8(a) is violated where a plaintiff, by engaging in group pleading,

8

fails to give each defendant fair notice of the claims against it." (internal quotation marks and citation omitted)).

Plaintiff responds that Rule 8 does not necessarily require her to separate out claims against individual defendants. Pl.'s Opp'n 8 (citing *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004)). But when courts tolerate group pleading, they do so because the complaint, while grouping defendants together, nevertheless "plead[s] the allegations with sufficient specificity so that each individual defendant is on notice of the particular claims asserted against it and the grounds for such claims." *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 2:15-CV-6015 (DRH)(AYS), 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017). Plaintiff's allegations fall well short of that standard: her conclusory group pleading gives no indication what role TFSI purportedly played in Plaintiff's implausible scenario that TFSI gratuitously performed Microgenics' contractual duties.

Plaintiff's suggestion that, even though TFSI did not incur obligations under Microgenics' contract with DOCCS, it nevertheless assumed a duty through its "actions and representations" concerning the contract lacks facial plausibility and should be rejected.

### III. Plaintiff has not plausibly alleged that TFSI assumed a duty to Plaintiff as a product manufacturer.

Finally, although Plaintiff's opposition focuses almost exclusively on her contention that TFSI negligently performed *services*, she momentarily diverts from that theme to argue that TFSI might have manufactured either the urinalysis analyzers Microgenics sold to DOCCS, the immunoassays used in the analyzers, or both. Pl.'s Opp'n 5–6. TFSI did not manufacture either product, but the identity of the manufacturer is irrelevant because Plaintiff is not alleging a breach of any common law duties owed by product manufacturers. The Complaint does not set forth any products-liability theories of recovery, nor does Plaintiff allege that any of the products supplied to DOCCS was defective or unreasonably dangerous. *See, e.g.*, *Franzese v. St. Jude Med., Inc.*,

9

No. 13-CV-3203 (JS)(WDW), 2014 WL 2863087, at *8 (E.D.N.Y. June 23, 2014) (listing the elements of a products-liability negligence claim, including that the manufacturer breached its duty "so that a product is rendered defective, i.e., reasonably certain to be dangerous" (internal quotation marks and citation omitted)). Indeed, Plaintiff has expressly disclaimed a products-liability claim. *See* Pl.'s Mem. in Opp'n to Microgenics' Mot. to Dismiss 1, 19 n.9 (disavowing a claim for products liability); Pl.'s Letter to Block, J. [ECF 22] at 3 ("Plaintiff has not yet asserted a claim for design defect; her only claim is for ordinary negligence."). Thus, even assuming the truth of Plaintiff's allegation that TFSI manufactured one or both products (it is not true), the allegation does nothing to shore up Plaintiff's facially deficient negligence claim.

## Conclusion

This case centers on Plaintiff's criticisms of the performance of Co-defendant Microgenics Corporation's contractual obligations to DOCCS. TFSI was not a party to that contract, incurred no obligations under that contract, and assumed no tort duties related to that contract. Thus, even in the unlikely event Plaintiff could muster some viable claim against, she has no colorable theory against TFSI, and her claim against TFSI should be dismissed.

Respectfully submitted,

Dated:  June 12, 2020

s/Nathan J. Marcusen
Christopher R. Carton (ID # CC0408)
Erica Mekles (ID # EM1020)
BOWMAN AND BROOKE LLP
317 George Street, Suite 320
New Brunswick, NJ  08901
Telephone: (201) 577-5175
chris.carton@bowmanandbrooke.com
erica.mekles@bowmanandbrooke.com

Nathan J. Marcusen (*admitted PHV*)
B<small>OWMAN AND</small> B<small>ROOKE</small> LLP
150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
Telephone: (612) 339-8682
nathan.marcusen@bowmanandbrooke.com

***Attorneys for Defendant Thermo Fisher Scientific Inc.***