**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NADEZDA STEELE-WARRICK, individually and on behalf of all others similarly situated,<br><br>         Plaintiff<br><br>   vs.<br><br>MICROGENICS CORPORATION AND THERMO FISHER SCIENTIFIC INC.,<br><br>         Defendants | Hon. Vera M. Scanlon<br><br>CASE 1:19-cv-06558-VMS<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MICROGENICS CORPORATION'S PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT** |

**Introduction**

Plaintiff Nadezda Steele-Warrick, having staved off dismissal of her garden-variety negligence claim, returns to this Court with a Second Amended Class Action Complaint [ECF No. 69[1]] (the "Complaint") and three new, conclusory claims—including two for alleged constitutional violations—that all rest upon the demonstrably false contention that Microgenics is responsible for inmate discipline at facilities operated by the New York Department of Corrections and Community Supervision ("DOCCS"). Despite Plaintiff's labored effort to generate constitutional and consumer-protection controversies where none exist, her new claims are unsustainable, and all should be dismissed in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff's new claims fall into two categories: (1) constitutional violations, allegedly actionable under a "state action" theory (*see* 42 U.S.C. § 1983); and (2) consumer protection violations under N.Y. Gen. Bus. Law ("GBL") § 349 for Microgenics' alleged use of "deceptive acts and practices" in its distribution of urinalysis products. Both theories are facially defective.

---

[1]    The unredacted Second Amended Complaint was filed under seal.

*First*, Plaintiff's constitutional claims are not actionable under Section 1983 because the Complaint does not plausibly allege state action by Microgenics. It was DOCCS, not Microgenics, that administered Plaintiff's allegedly faulty preliminary screen, chose not to perform a confirmatory test, conducted the disciplinary hearing, and imposed the complained-of punishment. Private firms do not become state actors merely by selling products to the government; nor do they become state actors by training government employees to use those products. As constitutional claims are not cognizable against private entities that have not engaged in state action, Plaintiff's claims under the Eighth and Fourteenth Amendments fail as a matter of law.

*Second*, the Complaint's deficiencies under Section 1983 notwithstanding, Plaintiff has failed to plead the requisite elements of her constitutional claims. For each claim, Plaintiff was required to plead that a Microgenics policy caused her alleged injuries, but the Complaint contains no such allegations. Plaintiff's Eighth Amendment claim fails because the discipline described in the Complaint is not sufficiently serious to implicate the Constitution's prohibition on cruel and unusual punishment, and, even if it were, Plaintiff has not plausibly alleged that Microgenics *deliberately* inflicted the discipline she received. Plaintiff's Fourteenth Amendment claim fails because the deprivations alleged in her Complaint do not constitute a cognizable "liberty interest" as required to state a claim for violation of substantive due process. Nor has Plaintiff alleged any sufficiently culpable conduct to sustain a Fourteenth Amendment claim.

*Third*, the consumer protection claim fails because GBL § 349 was not intended to reach complex transactions between sophisticated parties like the DOCCS–Microgenics contract, and even if it were, Plaintiff has not claimed that she was *personally* informed of or misled.

Accordingly, Plaintiff fails to state any valid claim under 42 U.S.C. § 1983 or GBL § 349, and Counts II, III, and IV of the Complaint should be dismissed with prejudice.

**Background**

As this Court is aware, Plaintiff's claims arise from the allegedly inaccurate results of a preliminary drug screen performed by DOCCS on April 14, 2019. At that time, Microgenics had a contract with DOCCS to supply urinalysis analyzers, immunoassays, and (limited) support services related to inmate drug testing. Alleging that Microgenics had negligently supplied faulty testing equipment under its contract with DOCCS, Plaintiff filed this putative class action on November 20, 2019. *See* ECF No. 1. Microgenics subsequently moved to dismiss Plaintiff's claims and strike the class allegations on April 24, 2020, which motion this Court denied on March 22, 2021. *See* ECF Nos. 48, 64. The Court found that Plaintiff had plausibly alleged that Microgenics owed her a duty of care and the allegations plausibly supported the possibility of a fact issue as to breach of the purported duty. *Steele-Warrick v. Microgenics Corp.*, No. 19 Civ. 6228 (VMS), 2021 WL 1109052, at *9–13 (E.D.N.Y. Mar. 22, 2021).

After the Court denied Microgenics' motion, Plaintiff amended her complaint a second time, asserting the new causes of action for alleged constitutional and consumer-protection violations. As noted, each of the new claims is fatally flawed and ripe for dismissal with prejudice.

**Law and Argument**

**I.    Rule 12(b)(6) standard.**

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Concord Assocs., L.P. v. Entm't Props. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 553 U.S. 662, 678 (2007)). The plausibility standard requires "'more than a sheer possibility that a defendant has acted unlawfully.'" *Galiano v. Fidelity Nat'l Title Ins. Co.*, 684 F.3d 309, 313 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Anyachebelu v. Brooklyn Hosp. Ctr.*, No. 16 Civ. 3159 (DLI) (VMS), 2017 WL 9511073, at *4 (E.D.N.Y. July 20, 2017) (quoting *Iqbal*, 556 U.S. at 678).

"Although this plausibility pleading standard is forgiving, a court is not required to credit 'legal conclusion[s] couched as . . . factual allegation[s]' or 'naked assertions devoid of further factual enhancement.'" *Steele-Warrick v. Microgenics Corp. et al.*, No. 19 Civ. 6558 (VMS), 2021 WL 1109052, at *9 (E.D.N.Y. Mar. 22, 2021) (quoting *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020)).

On the facts alleged in the Complaint, Plaintiff has not stated viable constitutional or consumer-protection claims, and those claims must be dismissed with prejudice.

## II. The Complaint fails to state a claim for violation of the Eighth Amendment or Substantive Due Process (Second and Third Causes of Action) because it does not plausibly allege that Microgenics engaged in state action.

The Complaint asserts two causes of action under 42 U.S.C. § 1983. First, Plaintiff contends that Microgenics "facilitate[ed] and enable[ed], and even actively and substantially encourag[ed]" the imposition of disciplinary sanctions on Plaintiff based on her allegedly "false positive" drug screen, thereby subjecting Plaintiff to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Compl. ¶ 226. Second and relatedly, Plaintiff claims that Microgenics' alleged facilitation of unwarranted discipline violated her substantive due process rights under the Fourteenth Amendment. Compl. ¶ 228. Despite Plaintiff's dubious insinuations that Microgenics—a private firm that sells diagnostics equipment—has some degree of authority over DOCCS vis-à-vis inmate discipline (it categorically does not), neither cause of action plausibly alleges state action under the relevant standards.

To hold a private entity accountable for an alleged constitutional violation under Section 1983, a plaintiff must show "state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). State action exists where a plaintiff's injury is "caused by the exercise of some right or

privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982). In other words, the private entity's actions must be "fairly attributable" to the state before Section 1983 liability can attach. *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010). In determining whether this precondition is satisfied, courts consider three main tests:

> For the purposes of [Section] 1983, the actions of a nominally private entity are attributable to the state . . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alterations and internal quotation marks omitted). Because Plaintiff has not invoked a "compulsion" theory of state action, *see* Compl. ¶ 216, Microgenics addresses only the "joint action" and "public function" theories below. Neither could possibly support a finding of state action in this case.

### A. Plaintiff has not alleged any facts to support a "joint action" theory of Section 1983 liability against Microgenics.

Plaintiff's claims under Section 1983 comprise two conclusory sentences of her 237-paragraph complaint. Compl. ¶¶ 226, 228. Notably, DOCCS—the *actual* state actor involved in Plaintiff's alleged deprivations—is not mentioned in either claim. *Id.* It is unclear how Plaintiff intends to prove that Microgenics and DOCCS teamed up to violate her constitutional rights when DOCCS is so conspicuously absent from these allegations. *See, e.g., Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 190 (E.D.N.Y. 2010) (granting news organizations' joint motion to dismiss Section 1983 claim for alleged Fourth Amendment violation where plaintiff advanced only "[one]

conclusory allegation of a 'media ride-along' [to the alleged illegal search and seizure], without a single specific allegation to support the claim that the media was *acting jointly with the police*." (emphasis added)).

Indeed, as noted *supra*, a plaintiff seeking to impose Section 1983 liability under a "joint action" theory must allege that the state provided "significant encouragement" to the private entity, or that the entity was a "willful participant" in joint activity with the state, or that the entity's complained-of conduct was inextricably "entwined" with official state policies. *Graham-Johnson v. Cty. of Albany*, 471 F. Supp. 3d 506, 519 (N.D.N.Y. 2020) (citations omitted). Clearly, then, the state must be *directly* implicated in a plaintiff's Section 1983 claim, and its alleged encouragement of, participation in, or entwinement with the private entity's actions must be adequately described. Plaintiff has not made even a cursory attempt to satisfy this requirement here.

### i. Plaintiff has not demonstrated that DOCCS "significantly encouraged" Microgenics' alleged violations.

Plaintiff's Section 1983 claims do not contain any facts to suggest that DOCCS "significantly encouraged" Microgenics in some Machiavellian scheme to violate her constitutional rights. To the contrary, Plaintiff's Complaint goes to great lengths to attempt to posture DOCCS as a victim of Microgenics' allegedly deceptive business practices under New York's consumer protection statute. Compl. ¶ 236. Plaintiff's claim that Microgenics hoodwinked DOCCS into disciplining prisoners based on tests that Microgenics knew were faulty—far-fetched as it is—cannot logically support any theory of joint state action under Section 1983, and certainly does not support an inference that DOCCS affirmatively encouraged Microgenics' conduct. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (explaining that "significant encouragement" exists only in situations where the state has provided such forceful support for the unlawful enterprise "that the [private entity's] choice must in law be deemed to be that of the State."). No plausible

6

reading of the Complaint suggests that DOCCS knowingly permitted—much less championed—Microgenics' alleged violations. Plaintiff therefore cannot show joint action under a "significant encouragement" theory.

> ### ii. Plaintiff has not alleged that Microgenics was a "willful participant" in joint misconduct with DOCCS.

Nor has Plaintiff satisfied the "willful participant" test for joint action under Section 1983. Courts in the Second Circuit have held that "[a] private actor can only be 'a willful participant in joint activity with the State or its agents' if the two share some *common goal* to violate the plaintiff's rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) (citation omitted) (emphasis added). "The touchstone of joint action is often a plan, prearrangement, conspiracy, custom, or policy shared by the private actor and the [state actor]." *Missere v. Gross*, 826 F. Supp. 2d 542, 567 (S.D.N.Y. 2011) (citation omitted); *see also Adickes v. Kress & Co.*, 398 U.S. 144, 158 (1970) (analogizing joint action as a quasi-contractual "meeting of the minds" between the state and private actor to deprive the plaintiff of his or her rights). At its core, then, the "willful participant" theory of joint action is about teamwork between state and private actors to infringe on a plaintiff's rights.

Here, Plaintiff has not plausibly alleged that Microgenics and the state worked in concert to violate her rights because her operative allegations do not even mention any action on DOCCS's part, other than its supposedly passive role as putative victim. It is axiomatic that "[a] requirement of the joint action charge is [that] *both* public and private actors share a common, unconstitutional goal." *Betts*, 751 F.3d 78, 85 (quoting *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991) (emphasis added). It thus follows that to state a claim under this test Plaintiff must plead facts demonstrating *how* DOCCS was involved in the alleged violation; absent some alleged action by DOCCS, Microgenics cannot be liable under Section 1983 as a willful

coparticipant. Further, even if Plaintiff *had* alleged discrete facts showing cooperation between DOCCS and Microgenics (which she does not do), Plaintiff could not credibly allege that DOCCS was simultaneously an affirmative coconspirator with and oblivious victim of Microgenics. DOCCS either helped Microgenics commit the alleged violations (implicating Section 1983 liability) or was unaware of the allegedly faulty testing protocol (eviscerating any theory of state action under Section 1983); Plaintiff cannot have it both ways.

Without pleading the requisite coordination between Microgenics and the state, Plaintiff's alleged constitutional violations are not actionable under Section 1983. *Sybalski*, 546 F.3d at 257 ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is [required] to show state action.") (citation omitted). As Plaintiff has not alleged any facts showing such cooperation, her claims are not sustainable under the "willful participant" test for Section 1983 liability.

### iii. Plaintiff has not alleged facts supporting an "entwinement" theory of joint action.

Finally, Microgenics' contract to supply DOCCS with urinalysis equipment and related services does not constitute sufficient "entwinement" with state policies to hold Microgenics accountable for allegedly unconstitutional inmate discipline.

Under the rarely-invoked entwinement test, "[c]onduct that is formally private may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982) (internal citation and quotation marks omitted).

However, Microgenics has not engaged in any quasi-governmental conduct merely by contracting with DOCCS to supply certain diagnostics equipment and training and therefore cannot be liable for inmate discipline under an "entwinement" theory. As discussed *infra*, private

firms do not become state actors merely by selling products or training services to the government. *See, e.g.*, *Johnson v. Newport Lo(R)illard*, No. 01 Civ. 9587 (SAS), 2002 WL 1203842 (S.D.N.Y. June 3, 2002) (holding that mere sale of goods to prison facility does not constitute action under color of state law). As such, Plaintiff's claims do not give rise to an inference of "entwinement" between Microgenics' conduct and DOCCS policies sufficient to support her state action theory.

> **B. Microgenics' sale of drug-testing equipment to DOCCS and provision of training to DOCCS employees does not constitute a traditional "public function."**

The only remaining avenue by which Plaintiff could attempt to show state action is the "public function" exception. Under this test, a private firm's activity is deemed a public function only if the government "traditionally *and* exclusively performed the function." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1929 (2019) (citation omitted). The Supreme Court has cautioned that "very few" activities qualify as public functions. *Id.* (citation omitted).

As a matter of law, Microgenics' contractual undertaking did not include any public functions. DOCCS hired Microgenics primarily to supply products to DOCCS facilities— specifically, urinalysis analyzers and specified reagents—and to provide certain ancillary services, such as installing the analyzers and training DOCCS employees to operate them. It is, however, well established that "a private firm does not become a state actor by selling its products to the government." *Steading v. Thompson*, 941 F.2d 498, 499 (7th Cir. 1991) (citation omitted). Nor does a private firm become a state actor by training government employees to use products it sells. *See, e.g.*, *O'Boyle v. Bradshaw*, 952 F. Supp. 2d 1310, 1315 (S.D. Fla. 2013) (supplying municipalities with breathalyzer test machines and training did not satisfy the public-function exception); *Neal-Lomax v. Las Vegas Metro Police Dep't*, No. 2:05-CV-1464-PMP-PAL, 2006 WL 2022989, at *7 (D. Nev. July 18, 2006) (reaching the same conclusion as to the provision of training on taser use). And to the extent Plaintiff would argue that drug testing of individuals held

in state custody *is* a traditional government function, it is DOCCS, not Microgenics, that performs the actual testing pursuant to state regulations.

Accordingly, Plaintiff cannot demonstrate state action under the public functions exception, and her Section 1983 claims against Microgenics should be dismissed.

## III.   Independently, the Complaint fails to state a claim for violation of the Eighth Amendment or Substantive Due Process (Second and Third Causes of Action) because it does not allege, plausibly or otherwise, that Microgenics maintained an official corporate policy that caused Plaintiff's alleged injuries.

A private company cannot be held liable under Section 1983 "unless the plaintiff proves that 'action pursuant to official … policy of some nature caused a constitutional tort.'" *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (quoting *Monell v. Dep't of Social Serv. of the City of N.Y.*, 436 U.S. 658, 691 (1978)) (alteration in original). Thus, to plead a Section 1983 claim against a private corporation, "a plaintiff must give a factual description of such a policy, not just bald allegations that such a thing existed." *Bess v. City of New York*, No. 11 CIV. 7604 TPG, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013). Failure to do so warrants dismissal. *Vartinelli v. Aramark Corr. Servs., LLC*, 796 F. App'x 867, 871–72 (6th Cir. 2019) (dismissing Section 1983 claim against Aramark where the plaintiff failed "to plausibly allege, or allege at all for that matter, that Aramark maintained a policy or custom that disregarded inmates' medical needs").

Here, Plaintiff hasn't even alleged the existence of any Microgenics policy that somehow caused the alleged constitutional torts, let alone provide a factual description of any such a policy. This omission entitles Microgenics to dismissal of Plaintiff's newfound Section 1983 claims. *See Harper v. City of New York*, 424 F. App'x 36, 39 (2d Cir. 2011) (affirming dismissal of Section 1983 claim because the plaintiff's complaint did "not even provide an indication of what the City's custom or policy to which he was subject consists of"). Far from alleging a company policy that

10

caused her injury, Plaintiff repeatedly asserts that Microgenics' "own standards" would have, if implemented, prevented her harm. *See, e.g.*, Compl. ¶ 186 (stating that "Defendants' own standards … mandated a gas chromatography and mass spectrometry confirmatory test before discipline can be imposed"). In other words, Plaintiff's claim is not that a company policy caused her injury, but that alleged noncompliance or non-implementation caused her injury. Such a theory is insufficient as a matter of law to support a Section 1983 claim against a private corporation.

## IV.   The Complaint fails to state a Section 1983 claim for violation of the Eighth Amendment (Second Cause of Action) because Plaintiff's alleged discipline was not sufficiently serious and she has not plausibly alleged that Microgenics deliberately inflicted punishment.

Even if the Complaint cleared the threshold hurdle of pleading state action or a corporate policy that caused her injury (it does not), Plaintiff's allegations fail to plausibly allege the substantive elements of an Eighth Amendment claim of cruel and unusual punishment.

### A.   Plaintiff's alleged discipline was not sufficiently serious to constitute cruel and unusual punishment under the Eighth Amendment.

To state a claim for relief for violation of the Eighth Amendment, "a plaintiff must plead 'a harm of magnitude that violates a person's Eighth Amendment rights.'" *Hurd v. Fredenburgh*, 984 F.3d 1075, 1084 (2d Cir. 2021) (quoting *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654) (2d Cir. 1993)). Plaintiff's alleged harms do not rise to the requisite level.

Following Plaintiff's positive drug screen, DOCCS confined Plaintiff, who was in custody for stabbing her mother-in-law, "in a disciplinary keeplock cell where she remained for eleven days." Compl. ¶ 67. While in the keeplock cell, she had only "limited access" to "property, packages, telephones, correspondence, and visitors," and her commissary privileges were suspended. *Id.* ¶ 68. Plaintiff claims the cell also lacked a "nightstand, radio, or closet," and that she lacked access to her belongings. *Id.* ¶¶ 70–71. Finally, Plaintiff alleges that, for her last few weeks in prison following the keeplock confinement, she lost out on "recreation, packages, and

commissary privileges," and "eligibility for the FRP program." *Id.* ¶¶ 79–80. Nevertheless, Plaintiff was released from DOCCS's custody as scheduled on May 22, 2019, approximately one month after her allegedly false urinalysis drug screen. *Id.* ¶¶ 66, 87.

As a matter of law, the discipline DOCCS imposed in response to Plaintiff's positive drug screen does not constitute cruel and unusual punishment. Quite the opposite, courts have repeatedly ruled that relatively short-lived keeplock or special-housing-unit ("SHU") confinement—with the associated loss of prison privileges—is not "sufficiently serious for the purpose of the Eighth Amendment." *McRae v. Fisher*, No. 9:17-cv-0146 (BKS/CFH), 2018 WL 3432743, at *3 (N.D.N.Y. June 6, 2018) (internal quotation marks omitted); *accord Jackson v. Heer*, 322 F. Supp. 3d 406, 412 (W.D.N.Y. 2018) (rejecting claim that SHU confinement could constitute cruel and unusual punishment, noting that the conditions of which plaintiff complained were "simply those that are normally associated with SHU confinement"); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 381 (S.D.N.Y. 2011) (finding that a nine-day confinement to a special housing unit with loss of "visitation, phone, and commissary privileges" was insufficient to support an Eighth Amendment claim); *Pilgrim v. Artus*, No. 07-cv-1001, 2010 WL 3724883, at *9 (N.D.N.Y. May 18, 2010) (finding that plaintiff's prison conditions, which included "three thirty (30) day and one forty-five (45) day periods in keeplock, loss of phone and commissary privileges, no regular visits, twenty-three (23)-hour confinement, and only three showers a week," did not constitute cruel and unusual punishment); *Thompson v. United States*, No. 09-CV-0964M, 2010 WL 1910293, at *4–6 (W.D.N.Y. May 7, 2010) (ruling that eighteen days in SHU (four days longer than the disciplinary action required) did not rise to the level of cruel and unusual punishment); *Jackson v. Johnson*, 15 F. Supp. 2d 341, 363 (S.D.N.Y. 1998) ("The mere placement

in keeplock for 99 days is not sufficiently egregious to constitute cruel and unusual punishment under the Eighth Amendment.").

Because, as a matter of law, Plaintiff's eleven-day confinement in keeplock cannot possibly constitute cruel and unusual punishment, she has not stated a plausible Section 1983 claim for violation of the Eighth Amendment.

### B. Furthermore, Plaintiff has not plausibly alleged that Microgenics deliberately inflicted the punishment she received.

Even if DOCCS had subjected Plaintiff to cruel and unusual punishment, she has not adequately pleaded the scienter requirement of her Eighth Amendment claim. An "Eighth Amendment violation typically requires a state of mind that is the equivalent of criminal recklessness." *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019). Under this standard, "only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, leads to liability." *Id.* (internal quotations and citation omitted). A defendant "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff's allegations fall far short of describing the "sufficiently culpable state of mind" required to support an Eighth Amendment claim. *Hurd v. Fredenburgh*, 984 F.3d 1075, 1084 (2d Cir. 2021). Microgenics' actions in supplying purportedly substandard urinalysis products and services did not inflict punishment on Plaintiff—not deliberately, recklessly, or otherwise. Plaintiff does not, for example, allege that Microgenics placed Plaintiff in keeplock or withdrew any of her prison privileges. She does not even allege that Microgenics was aware that DOCCS had screened her urine, that the screen results were positive, or that DOCCS decided to impose discipline as a consequence of Plaintiff's drug screen. *See Jackson v. Heer*, 322 F. Supp. 3d 406, 412 (W.D.N.Y.

2018) (finding that even the submission of "false disciplinary charges" is "too attenuated to support a claim" for cruel and unusual punishment).

To the contrary, the drug screen and disciplinary process was conducted by DOCCS alone, in accordance with state law. Indeed, New York regulations dictated the procedures that led to Plaintiff's discipline and provided no role in the process for Microgenics.[2] New York state regulations (not Microgenics) insisted on the use of urinalysis testing to ascertain whether prisoners are using drugs. *See* N.Y. Comp. Codes R. & Regs. Tit. 7 § 1020.1 ("Urinalysis test procedures shall be used to verify whether or not an inmate has used drugs . . . ."). Under those regulations, a DOCCS employee (not Microgenics) identified Plaintiff as a drug-test target, and a DOCCS lieutenant or higher authority (not Microgenics) approved the testing. N.Y. Comp. Codes R. & Regs. Tit. 7 § § 1020.4(b). As required by the regulations, DOCCS (not Microgenics) collected and tested Plaintiff's urine. N.Y. Comp. Codes R. & Regs. Tit. 7 § 1020.4(d), (f). As required by the regulations, DOCCS (not Microgenics) initiated and conducted the disciplinary proceedings following Plaintiff's positive drug screen. N.Y. Comp. Codes R. & Regs. Tit. 7 § 253.6. And as required by the regulations, DOCCS (not Microgenics) determined the discipline Plaintiff received following her disciplinary hearing. N.Y. Comp. Codes R. & Regs. Tit. 7 § 253.7. From the time DOCCS initiated Plaintiff's drug screen through to the imposition of punishment, DOCCS was in control, and Microgenics played no role in the proceedings and thus did not inflict—deliberately or otherwise—any punishment Plaintiff received.

Plaintiff seems to imply that Microgenics induced or tricked DOCCS into punishing prisoners by allegedly omitting to tell DOCCS that positive results from immunoassay drug

---

[2]   DOCCS issued a directive that implemented these regulations. *See* DOCCS Directive No. 4937 [ECF No. 48-2 at 183–192].

screens should be confirmed by other test methods. *E.g.*, Compl. ¶¶ 184–85. Even if that were true, it is far too attenuated to support an Eighth Amendment claim. But it isn't true; it's demonstrably false. Microgenics repeatedly informed DOCCS that immunoassay screens are preliminary and should be confirmed by other means.

For example, Microgenics' bid to supply urinalysis products and services expressly stated that its "assays provide a simple and rapid analytical screening for detecting drugs in urine. ***For further confirmation of a urine sample, one should use methods such as GC/MS or LC/MS***." Contract No. CC161458, Appendix H, Attachment B at Bates No. DOCCS 00255, attached to the Decl. of N. Marcusen as Ex. 1 (emphasis added). Subsequently, when Microgenics supplied drug-screen immunoassays to DOCCS, the Package Inserts for the assays included the following statement in bold typeface and italics: "***This assay provides only a preliminary analytical test result. A more specific alternative chemical method must be used to obtain a confirmed analytical result. Gas chromatography/mass spectrometry (GC/MS) or Liquid chromatography/tandem mass spectrometry (LC-MS/MS) is the preferred confirmatory method.***" Package Insert for CEDIA Buprenorphine II Assay at 1, attached to the Decl. of N. Marcusen as Ex. 2 (emphasis in original). This information is also set forth in the immunoassays' Indications for Use. *See, e.g.*, 510(k) Substantial Equivalence Determination Decision Summary, 510(k) Number k163101 [ECF No. 48-2 at 205–218] at 2.[3] Notwithstanding Plaintiff's bald

---

[3] The Court previously considered Contract No. CC161458 and the Indications for Use in connection with Microgenics' motion to dismiss the First Amended Complaint. The Court may also consider the Package Insert as Plaintiff refers to it in the Second Amended Complaint. *See Gioia v. Janssen Pharms.*, No. 19CV04629JMASIL, 2021 WL 602683, at *4 (E.D.N.Y. Feb. 16, 2021) ("The Court takes judicial notice of the FDA-approved package insert."); *cf. Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (noting that courts may consider documents integral to the complaint).

allegations to the contrary, it is irrefutable that Microgenics repeatedly informed DOCCS that its assays provide preliminary analytical test results and that other test methods must be used to obtain confirmed results.

Regardless, even if Microgenics hadn't said a word about confirmatory testing, DOCCS had known for decades that immunoassay manufacturers recommend the use of confirmatory testing. *See Peranzo v. Coughlin*, 608 F. Supp. 1504, 1514 (S.D.N.Y. 1985) (discussing recommendations from a DOCCS immunoassay supplier that "positive results be confirmed by any of several chromatographic procedures"). Consistent with its intimate knowledge of immunoassay testing, DOCCS was already using confirmatory testing for parolees, even while simultaneously opting to forgo such testing for inmates. DOCCS Directive No. 9432 [ECF No. 48-2 at 160–172] at 3. In fact, DOCCS specifically chose confirmatory testing for parolees "to provide for a greater margin of accuracy." *Id.*

Despite Plaintiff's conclusory allegations to the contrary, Microgenics did not inflict punishment on Plaintiff. In accordance with New York law, DOCCS—and DOCCS alone—conducted Plaintiff's drug screen, held disciplinary proceedings, and imposed discipline. For this independent reason, the Complaint fails to state a Section 1983 claim for violation of the Eighth Amendment.

**V.    The Complaint fails to state a Section 1983 substantive due process claim (Third Cause of Action) because it does not plausibly allege the violation of a liberty interest or any sufficiently culpable conduct.**

As with Plaintiff's Eighth Amendment claim, her substantive due process claims fails for lack of plausible allegations as to the substantive elements of the claim.

**A.  Plaintiff has not plausibly alleged violation of a liberty interest.**

"The first step in substantive due process analysis is to identify the constitutional right at stake." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). In the prison context,

cognizable liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1996).

Here, although the Complaint does not expressly assert a liberty interest, Plaintiff apparently claims such an interest in avoiding her keeplock confinement and associated loss of privileges. *See* Compl. ¶ 228. As a matter of law, however, a keeplock confinement of eleven days under ordinary keeplock conditions does not implicate a liberty interest. *See Palmer v. Richards*, 364 F.3d 60, 65–66 (2d Cir. 2004) (discussing the duration and nature of confinement necessary to implicate a liberty interest and citing relevant cases); *Vaughan v. Erno*, 8 F. App'x 145, 146 (2d Cir. 2001) (holding that the plaintiff "failed to raise an issue of fact that his keeplock confinement constituted denial of a due process right because he did not allege any adverse conditions of the confinement other than its duration" of thirty days). Plaintiff's substantive due process claim is thus legally deficient and must be dismissed.

### B. Plaintiff has not plausibly alleged the requisite culpability for a substantive due process claim.

Plaintiff's substantive due process claim fails at the second step as well, which requires her to plead and prove sufficiently culpable conduct. Generally, a plaintiff asserting a substantive due process claim must "'demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021). The type of conduct that "most probably" supports a substantive due process claim is that which is "intended to injury in some way unjustifiable by any government interest." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Mere negligence, however, "will never give rise to a substantive due process violation." *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005). Nor does conduct that is "merely incorrect or ill-advised." *Cannon v. NYS Commissioner of Social*

*Servs.*, No. 19 Civ. 6493 (CM), 2019 WL 3743975, at *4 (S.D.N.Y. Aug. 7, 2019). Within prison settings in particular, "[v]ery few conditions … have been found 'shocking' enough to violate a prisoner's right to substantive due process." *Samms v. Fischer*, No. 9:10-CV-0349 (GTS/GHL), 2011 WL 3876528, at *12 (N.D.N.Y. Mar. 25, 2011) (citation omitted).

Plaintiff's original state law claim, which survived Microgenics' first motion to dismiss, is for mere negligence, and to a significant extent, rests of allegations of breaches of warranties. *See Steele-Warrick v. Microgenics Corp.*, No. 19 CIV 6558 (VMS), 2021 WL 1109052, at *12 (E.D.N.Y. Mar. 22, 2021) (finding that plaintiff plausibly alleged that Microgenics "warrantied a uniquely accurate urinalysis system"). While the Court has concluded that Plaintiff's allegations are sufficient to raise a "reasonable possibility of a fact issue" as to negligence, they fall far short of the shocks-the-conscience standard required to state a claim for violation of substantive due process rights. *See Weidner v. City of New York*, No. 16 Cv. 6935 (RMB), 2017 WL 2984021, at *4 (S.D.N.Y. June 20, 2017) (rejecting due process claim based on allegation that private contractor misrepresented that its fire-suppression work was conducted by licensed contractors).

In sum, Plaintiff's Section 1983 claims for alleged Eighth Amendment and substantive due process violations fail for multiple independent reasons and should be dismissed.

**VI.    Plaintiff's consumer protection claim (Fourth Cause of Action) fails because GBL § 349 does not apply to the DOCCS–Microgenics contract, and even if it did, Plaintiff has not claimed *personal* knowledge of or reliance upon Microgenics' allegedly misleading literature.**

Finally, Plaintiff's consumer protection claim under GBL § 349 fails as a matter of law and must be dismissed because the DOCCS–Microgenics contract is not consumer-oriented and Plaintiff has not alleged *personal* knowledge of the allegedly deceptive conduct.

**A.  GBL § 349 does not apply to the DOCCS–Microgenics contract.**

To state a claim under GBL § 349, a plaintiff must allege that the defendant has engaged in: (1) a *consumer-oriented* act, practice, or advertisement that is (2) materially misleading, and (3) causes injury to the plaintiff. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)); *see also Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing the elements for a prima facie case under GBL § 349). The critical inquiry is whether the disputed transaction was "consumer-oriented," as "allegedly deceptive acts that occur between relatively sophisticated entities with equal bargaining power do not give rise to § 349 liability." *Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004). Similarly, "[c]ontracts to provide commodities that are *available only to businesses* do not fall within the parameters of § 349." *Id.* (emphasis added). In short, if a transaction does not involve ordinary consumers purchasing ordinary goods or services, GBL § 349 does not apply.

First and foremost, Plaintiff's claim under GBL § 349 fails because the DOCCS–Microgenics contract is not consumer-oriented. DOCCS and Microgenics are both highly sophisticated parties that regularly enter into complex commercial transactions. As such, any allegedly misleading conduct between DOCCS and Microgenics is not covered by GBL § 349, which is expressly intended to protect *unsophisticated* individual consumers. *See, e.g., Genesco Ent. v. Koch*, 593 F. Supp. 743, 751 (S.D.N.Y. 1984) ("The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods[.]"); *see also Exxonmobil Inter-America, Inc.*, 328 F. Supp. 2d at 450 (observing that "[Section] 349 [was] designed to protect 'the little guy' from false advertising, pyramid schemes, bait-and-switch sales tactics, and other mischievous machinations by swindlers and scallywags" and therefore does not apply to complex transactions between sophisticated parties).

In addition, the transaction between DOCCS and Microgenics was highly customized to DOCCS's specific needs; in other words, it was not merely a "standard-issue" contract of boilerplate terms offered to the public at large. Specialized, one-off contracts that are "tailored to meet the [plaintiff's] wishes and requirements" are not consumer-oriented for § 349 purposes because they are unlikely to threaten a widespread dissemination of misleading information to average consumers. *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 662 N.E.2d 763 (1995); s*ee also Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 146–48, 630 N.Y. Supp. 2d 769, 773  (2d Dep't 1995) (holding that "large, private, single-shot contractual transactions" are "clearly not cognizable under [Section 349]").

Finally, there was no disadvantageous disparity of bargaining power between DOCCS and Microgenics. On the contrary, Microgenics' bid was prepared according to DOCCS's own specifications, and the final contract was approved by *both* the Attorney General and the Comptroller. This high level of scrutiny by sophisticated professionals belies any argument that the DOCCS–Microgenics agreement resembles the type of predatory, consumer-duping transaction that GBL § 349 is intended to reach. As such, GBL § 349 does not apply, and Plaintiff's consumer protection claim must be dismissed.

### B. Plaintiff has not alleged *personal* deception by Microgenics and therefore cannot prove causation under GBL § 349.

Even if GBL § 349 did apply to Microgenics' agreement with DOCCS (it does not), Plaintiff's claim would still fail because she neither saw nor relied upon Microgenics' allegedly misleading statements and therefore cannot prove causation. New York case law "consistently holds that 'in order to have been injured by the defendant's deceptive act [under GBL § 349], a plaintiff must have been *personally* misled or deceived.'" *Fero v. Excellus Health Plan, Inc.*, No. 6:15-cv-06569-EAW, 2020 WL 6866369, at *9 (W.D.N.Y. Nov. 23, 2020) (quoting *Ritchie v. N.*

*Leasing Sys., Inc.*, No. 12 Civ. 4992 (KBF), 2016 WL 1241531, at * 21 (S.D.N.Y. Mar. 28, 2016) (emphasis added). Thus, "to properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018) (quoting *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014); *see also Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013) ("In an action under GBL § 349, each plaintiff must individually plead the disclosures he or she received were inadequate, misleading, or false, and that she was injured as a result of the insufficient or false disclosures.").

Plaintiff cannot satisfy her burden to show personal knowledge of or reliance upon the alleged misrepresentations here. The Complaint does not establish that Plaintiff saw any product literature or marketing materials prior to her April 14, 2019 drug screen. Nor indeed could Plaintiff properly establish *pre-purchase* reliance thereon, as the purchaser/consumer for purposes of GBL § 349 was DOCCS, not Plaintiff. Thus, absent *personal* deception due to Microgenics' allegedly misleading statements, Plaintiff cannot establish causation under GBL § 349, and her claim should be dismissed.

### Conclusion

Plaintiff has failed to plausibly allege any theory of state action by Microgenics sufficient to support her Section 1983 claims. On the contrary, she has neglected to plead any facts suggesting DOCCS's encouragement of, participation in, or entwinement with Microgenics' alleged violations. As there can be no state action without some involvement by a state actor, these claims fail as a matter of law. These claims also fail because Plaintiff has not alleged that Microgenics' alleged constitutional violations occurred pursuant to an official policy, as is necessary to hold a

private company liable under Section 1983. Nor do Plaintiff's allegations satisfy the substantive elements of her Eighth and Fourteenth Amendment claims; simply put, neither the alleged violations nor Microgenics' alleged degree of culpability rise to the level of seriousness required. Finally, the Complaint does not state a plausible claim under GBL § 349, as that statute does not apply to the complex commercial contract at issue in this case. For the foregoing reasons, Microgenics respectfully requests that Counts II, III, and IV of Plaintiff's Second Amended Class Action Complaint be dismissed, with prejudice.

Respectfully submitted,

Dated: June 10, 2021

s/Nathan J. Marcusen
Chris R. Carton (ID # CC0408)
Erica Mekles (ID # EM1020)
BOWMAN AND BROOKE LLP
317 George Street, Suite 320
New Brunswick, NJ  08901
Telephone: (201) 577-5175
chris.carton@bowmanandbrooke.com
erica.mekles@bowmanandbrooke.com

Nathan J. Marcusen (*admitted PHV*)
BOWMAN AND BROOKE LLP
150 South Fifth Street, Suite 3000
Minneapolis, MN  55402
Telephone: (612) 339-8682
nathan.marcusen@bowmanandbrooke.com

***Attorneys for Defendant Microgenics Corporation***