UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
―――――――――――――――――――――

NADEZDA STEELE-WARRICK and
DARRYL SCHULTZ, individually and
on behalf of all others similarly situated,

               Plaintiffs,

      -against-

MICROGENICS CORPORATION,
THERMO FISHER SCIENTIFIC, INC.,
ANTHONY ANNUCCI, JAMES
O'GORMAN, CHARLES KELLY,
RICHARD FINNEGAN, DONALD
VENETTOZZI, ANTHONY
RODRIGUEZ, COREY BEDARD, and
JENNIFER BOOTH,

               Defendants.
―――――――――――――――――――――

**MEMORANDUM AND ORDER**
Case No. 19-cv-6558

*Appearances*
*For the Plaintiffs*:
MATTHEW D. BRINCKERHOFF
Emery Celli Brinckerhoff
600 Fifth Avenue, 10th Floor
New York, NY 10020

KAREN L. MURTAGH
Prisoners' Legal Services of New York
41 State Street, Suite M112
Albany, NY 12207

*For Defendants Microgenics*
*Corporation and Thermo Fisher*
*Scientific, Inc.*:
ERICA MEKLES
Bowman and Brooke LLP
317 George Street, Suite 320
New Brunswick, NJ 08901

**BLOCK, Senior District Judge:**

     Plaintiffs Nadezda Steele-Warrick ("Steele-Warrick") and Darryl Schultz

("Schultz"), individually and on behalf of a putative class (collectively

"Plaintiffs"), brought this action against Defendants Microgenics Corporation, Thermo Fisher Scientific, Inc. (collectively "Microgenics Defendants"), and current and former employees of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiffs allege that they were disciplined on the basis of false-positive drug test results produced by Microgenics Defendants' testing system while in DOCCS's custody.

By an Order dated March 22, 2021 (the "2021 Order"), *Steele-Warrick v. Microgenics Corp.*, No. 19 CIV. 6558 (VMS), 2021 WL 1109052, (E.D.N.Y. Mar. 22, 2021), this Court denied Microgenics Defendants' motion to dismiss Plaintiffs' negligence claim. Since then, Plaintiffs have amended their complaint to add constitutional and state business law claims against Microgenics Defendants. Microgenics Defendants now move to dismiss Plaintiffs' new constitutional claims and renew their request to dismiss Plaintiffs' negligence claim and strike Plaintiffs' class allegations.[1] For the following reasons, these motions are denied except as to Plaintiffs' Eighth Amendment claim.

---

[1] Microgenics Corporation moves to dismiss Plaintiffs' negligence claim and strike their class allegations; Thermo Fisher Scientific, Inc., moves to dismiss Plaintiffs' constitutional and state business law claims. Each of these claims are alleged against both companies, and each joins the other's motion to dismiss.

# I. ALLEGATIONS AGAINST MICROGENICS DEFENDANTS

The Court assumes the parties' familiarity with the allegations and recounts only those pertinent to resolving the instant motions. The allegations against Microgenics Defendants from the First Amended Complaint are detailed in the 2021 Order. *Id.* at *1-9.[2] Since the 2021 Order, Plaintiffs have amended their Complaint to include additional allegations against Microgenics Defendants. Relevant portions of the Plaintiffs' allegations, taken as true, are briefly outlined below. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).[3]

Microgenics Defendants manufactured a system for urinalysis drug testing ("Indiko Plus") and contracted with DOCCS for its use in New York State correctional facilities. Plaintiffs allege that Microgenics Defendants redrafted DOCCS's internal policy and procedures governing drug testing (the "Directive") to accommodate for Indiko Plus's use, installed and maintained testing machines at 52 DOCCS facilities, trained DOCCS personnel to use Indiko Plus, testified at

---

[2] Plaintiffs' alleged injuries are described in an April 26, 2023 Opinion adjudicating DOCCS Defendants' motions to dismiss. *Steele-Warrick v. Microgenics Corp.*, No. 19-CV-6558-FB-VMS, 2023 WL 3081290, at *1-4 (E.D.N.Y. Apr. 26, 2023).

[3] Microgenics Defendants' motions point to findings in a report by the New York State Inspector General (the "IG Report"), incorporated by reference into the Third Amended Complaint. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998) (courts can consider materials incorporated into the complaint by reference on a 12(b)(6) motion); TAC ¶ 271-72, 287, 295, 300 (referencing IG Report findings).

inmate disciplinary proceedings regarding Indiko Plus's reliability, and answered questions from DOCCS administrators regarding its performance. Plaintiffs allege that throughout this relationship, Microgenics Defendants misled DOCCS as to Indiko Plus's reliability and proper use. Plaintiffs claim that they failed to make clear that Indiko Plus "should be used as an initial screen only, and confirmatory testing is required to verify any positive result," supporting its use to discipline inmates despite knowing that DOCCS was not using confirmatory testing pursuant to Indiko Plus's standards. TAC ¶ 48-49.

Plaintiffs allege that DOCCS lacked the capability to understand risk factors for false-positive test results, including cross-reactivity with non-illicit medications and proper cutoff levels for substances contained in urine samples. DOCCS had instead relied on its testing suppliers to provide this expertise, a dependence of which Microgenics Defendants were aware. Plaintiffs also allege that Microgenics Defendants reassured DOCCS of Indiko Plus's reliability after DOCCS personnel raised concerns about testing irregularities, at one point failing to inform DOCCS that certain inmate urine samples had been confirmed to be false positives.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). Courts may consider the complaint and materials attached thereto in making this determination. *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While "detailed factual allegations," are not necessary, "provid[ing] the grounds of . . . entitlement to relief requires more than labels and conclusions." *Bell Atl. Corp.*, 550 U.S. at 555.

### III. DISCUSSION

#### a. Plaintiffs' Negligence Claim

Microgenics Defendants again ask this Court to dismiss Plaintiffs' negligence claim on the basis that they owed Plaintiffs no duty of care, after this argument was rejected in the 2021 Order. In support, they point to findings in the since-released IG report that DOCCS ignored instructions included in test packages calling for confirmatory testing. Plaintiffs allege that Microgenics Defendants owed them a duty "to ensure that the Indiko Plus urinalysis analyzers were used in accordance with applicable standards and produced accurate and reliable test results." TAC ¶ 341.

Claims for negligence in New York require that a plaintiff plead "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury

5

proximately resulting therefrom." *Pasternack v. Lab. Corp. of Am. Holdings*, 27

N.Y.3d 817, 825 (N.Y. 2016) (internal quotation omitted). "In the absence of a

duty, as a matter of law, there can be no liability." *Id.* The existence and scope of a

duty is a question of law. *Id.* "[A] contractual relationship by itself generally is not

a source of tort liability to third parties," unless "the contracting party, in failing to

exercise reasonable care in the performance of its duties, launches a force or

instrument of harm." *Landon v. Kroll Lab. Specialists, Inc.*, 22 N.Y.3d 1, 6 (N.Y.

2013) (cleaned up). This inquiry is grounded in "logic, science, weighty competing

socioeconomic policies and sometimes contractual assumptions of responsibility"

with the aim of dividing "societal risks" and loss "on a fair, prudent basis."

*Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994).

   In *Landon*, the New York Court of Appeals held that a laboratory that

processed a prison inmate's urine sample owed him a duty to "keep[] with relevant

professional standards," where the laboratory was in "the best position to prevent

false positive results." *Landon*, 22 N.Y.3d at 6-7. The Court elaborated in

*Pasternack* that a testing program administrator or laboratory can owe a duty to

testing subjects when they fail "to adhere to professionally accepted scientific

testing standards," or standards that "implicate the scientific integrity of the testing

process." 27 N.Y.3d 817 at 826-27. Aside from the 2021 Order, no court has

addressed whether a test manufacturer owes a similar duty.

The 2021 Order found that Plaintiffs "plausibly allege[d] that Defendants were in the best position to prevent false positive results" under *Landon* because DOCCS relied on Microgenics' "warranties that [Indiko Plus] would be provided consistent with relevant professional standards" and exercised "significant authority" over testing. *Steele-Warrick*, 2021 WL 1109052, at *10. It highlighted Microgenics Defendants' contractual agreement "to hold [New York] and DOCCS harmless with respect to all liabilities arising out of any third-party claim in any way connected with [Microgenics Defendants'] performance of the Contract '*including negligence*, active or passive or improper conduct of the Contractor, its officers, agents . . . or employees.'" *Id*. at *6 (emphasis added). It also noted that Microgenics Defendants were "to abide by applicable drug testing standards" to "ensure that the testing was accurate and reliable." *Id*. at *11; TAC ¶ 43.

Microgenics Defendants now argue that the IG Report shows that they are neither a program administrator nor a laboratory, and therefore cannot owe a duty under *Landon* and *Pasternack*. They also contest that they were in "the best position to prevent false positive results." *Landon*, 999 N.E. 2d at 1124.

First, Microgenics Defendants' formulistic argument regarding *Landon* and *Pasternack* is misguided. *Pasternack* does not restrict the universe of third-party liability to laboratories and program administrators, neither of which it defines. It merely clarifies *when* laboratories and program administrators owe a duty,

7

explaining that liability "does not encompass every step of the testing process" and that violating federal testing regulations "unrelated to the actual performance of scientific testing" is not alone sufficient to create liability. *Pasternack*, 27 N.Y.3d at 820, 826-27. Even if *Pasternack* did limit liability to laboratories and administrators, Plaintiffs plausibly allege that Microgenics served as an administrator for the same reasons cited in the 2021 Order. *See Steele-Warrick*, 2021 WL 1109052, at *10-11.

Furthermore, the IG Report does not refute that Microgenics Defendants were best positioned to prevent false positives under *Landon*. Microgenics Defendants point to findings that Indiko Plus test packages contained instructions calling for confirmatory testing for positive results. IG Report at 19. However, Plaintiffs allege that Microgenics Defendants failed to instruct DOCCS on confirmatory testing across the procurement and implementation process. Plaintiffs allege that Microgenics Defendants warranted that testing would be "substantially uninterrupted or error-free in operation"; revised the Directive, which governed DOCCS's testing system; oversaw Indiko Plus's implementation and operation; responded to concerns from DOCCS administrators, maintained equipment; and testified at disciplinary proceedings. TAC ¶ 40. After DOCCS personnel raised concerns regarding false positives, Plaintiffs allege that Microgenics Defendants reassured them that Indiko Plus simply identified more drug users than other

8

systems, failing to inform DOCCS after four of six inmate samples sent to them were confirmed to be false positives. DOCCS's alleged lack of expertise regarding testing reliability also supports Microgenics' ability to prevent false positives.

Because Plaintiffs plausibly allege that Microgenics Defendants owed them a duty of care, Plaintiffs' negligence claim stands.

**b. Plaintiffs' General Business Law Claim**

Plaintiffs allege that Microgenics Defendants violated New York General Business Law § 349 by deceiving DOCCS as to whether Indiko Plus could be used without confirmatory testing. General Business Law § 349 bars "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." GBL § 349. To plead a § 349 claim, a plaintiff must allege that: "(1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 176 (2021).

**1. Consumer-Oriented Conduct**

Microgenics Defendants argue that Plaintiffs' § 349 claim fails to allege consumer-oriented conduct. Plaintiffs must allege that a defendant's conduct was "consumer-oriented," having "a broader impact on consumers at large" or being "directed to . . . the marketplace." *Himmelstein*, 37 N.Y.3d at 176-77 (internal

quotation omitted). "[U]nique private transactions between sophisticated business parties" therefore "do not give rise to liability." *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 742 (S.D.N.Y.) (cleaned up). However, some courts have allowed § 349 claims regarding business contracts that allege "consumer injury *or* harm to the public interest." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (internal quotation omitted) (emphasis added).

Plaintiffs argue their allegations are allowable under *Securitron* because Microgenics Defendants' deceptions harmed the public interest. But claims invoking the public interest must still allege consumer-oriented conduct. *Tasini*, 851 F. Supp. 2d at 743 (S.D.N.Y.). The relevant inquiry is therefore (1) whether Microgenics Defendants' conduct is alleged to impact the public interest and (2) whether DOCCS inmates can be considered consumers.

Plaintiffs sufficiently allege that Microgenics Defendants' conduct affected the public interest—they claim it caused thousands of DOCCS inmates to be punished without justification. *See Securitron*, 65 F.3d at 264 (claim that defendant "gave false information about [locks] to . . . a regulatory agency primarily concerned with the safety of the public" was sufficient).

Next, no caselaw disqualifies DOCCS inmates from the consuming public for the purposes of § 349. The New York Court of Appeals recently embraced a broad understanding of the consuming public which can include distinct

10

subclasses. *See Himmelstein*, 37 N.Y.3d at 178 ("Consumer-oriented conduct need not be directed to *all* members of the public," and can instead affect "a subclass of consumers," like professional users of business services.). *Cf. Vitolo v. Mentor H/S, Inc.*, 213 F. App'x 16, 17-18 (2d Cir. 2007) (disallowing claim where deceptive representations were made to a single doctor, affecting only a limited group of his patients instead of "the public at large"). Given § 349's prohibition on all deceptive business practices, "consumers" is also broader than just those "who purchase goods and services for personal, family, or household use." *Himmelstein*. 37 N.Y.3d at 176-77.

Here, Plaintiffs allege that Microgenics Defendants' conduct had a broad enough impact to qualify for § 349 protection. Plaintiffs allege that tens of thousands of DOCCS inmates were tested using Indiko Plus at 52 DOCCS facilities and that thousands were disciplined because of false-positive results it produced. The wide effect on DOCCS inmates, as well as the public nature of Microgenics Defendants' contract, justify allowing Plaintiff's § 349 claim to proceed. *Cf. EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist.*, 124 F. Supp. 2d 861, 875 (S.D.N.Y. 2000) ("Although business-to-business transactions could in some rare cases have a wide enough impact on consumers to justify a § 349 claim, it is well established that private contract disputes, unique to the parties . . . would not fall within the ambit of the statute.").

11

**2. Causation**

Microgenics Defendants also argue that Plaintiffs fail to plead causation because Plaintiffs were not personally aware of misrepresentations Microgenics made to DOCCS. They point to the general requirement that "a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." *Dash v. Seagate Tech. (U.S.) Holdings, Inc.,* 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014) (internal quotation omitted). But this requirement has no rational application where a plaintiff was not himself deceived and was instead injured as a third-party to a deception. *Gale v. Int'l Bus. Machines Corp.*, 9 A.D.3d 446, 447 (2004), *Dash*'s source for this principle, applied it with the reasoning that "if the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury." *Id.* at 447. However, where a plaintiff is harmed by misrepresentations to a different party—as with *Securitron*—it is not necessary for the plaintiff to see the misrepresentation for it to cause his injury. Microgenics Defendants' reliance on *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018), is also unavailing—there, the plaintiff-medical patient failed to plead that either he *or* his doctor saw the alleged misrepresentations, making it impossible that they caused

12

his injury. It is enough that Plaintiffs allege injury as a result of DOCCS's reliance on Microgenics' misrepresentations—Plaintiffs' § 349 claim therefore stands.

### d. Plaintiffs' § 1983 Claims

Plaintiffs' Third Amended Complaint adds constitutional claims against Microgenics Defendants under 42 U.S.C. § 1983, alleging violations of their Eighth Amendment and substantive due process rights. Plaintiffs fail to plead a sufficiently serious injury, dooming their Eighth Amendment claim. However, their due process claim survives.

Before the Court can reach whether Plaintiffs have adequately alleged these constitutional violations, it must first determine whether it has met two pleading requirements of § 1983 claims against private entities: (1) whether Plaintiffs have plausibly alleged that Microgenics Defendants' conduct is attributable to the state; and (2) whether Plaintiffs have plausibly alleged that their injuries resulted from an official policy or custom of Microgenics Defendants. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257-58 (2d Cir. 2008); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990).

### 1. State Action

In *Sybalski*, the Second Circuit explained that a § 1983 plaintiff "must allege that the state was involved with the activity that caused the injury giving rise to the

action." *Sybalski*, 546 F.3d at 257-58. A private entity's conduct is attributable to

the state when

> (1) the entity acts pursuant to the coercive power of the state or is controlled by the state (the compulsion test); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies (the joint action test or close nexus test); or (3) when the entity has been delegated a public function by the state, (the public function test).

*Id.* at 257 (cleaned up).

Plaintiffs plausibly allege state action under the public function test. "[A]

private entity may qualify as a state actor when it exercises powers" which are

"traditionally and exclusively performed by the government." *Manhattan Cmty.*

*Access Corp. v. Halleck*, 139 S. Ct. 1921, 1929 (2019) (internal quotation omitted).

"[S]ignificant or even total engagement in performing public contracts" is not

alone sufficient for acts of private businesses to be attributed to the government.

*Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).

The only court to examine the issue held that "drug-testing in a prison may

be considered a traditional state function." *Amig v. Cnty. of Juniata*, 432 F. Supp.

3d 481, 487 (M.D. Pa. 2020). *Amig* reasoned that "maintaining a drug-free setting"

is central to the state's duty to ensure inmate safety and held that the prison in

question "cannot . . . delegate the duty to monitor drug use [to] a private party and

absolve inmates of constitutional rights by doing so." *Id.*

14

Microgenics Defendants argue that monitoring drug use is not alleged to have been delegated to them as it was in *Amig*, since Microgenics did not directly administer tests to inmates. However, Plaintiffs allege that Microgenics Defendants were so extensively involved in implementing, overseeing, and directing drug testing that they effectively were delegated authority to "monitor drug use." *Amig*, 432 F. Supp. 3d at 487. They also allege that Microgenics Defendants caused their warrantless discipline by failing to ensure Indiko Plus's proper use.

Microgenics Defendants also point to *O'Boyle v. Bradshaw*, 952 F. Supp. 2d 1310 (S.D. Fla. 2013), in which a private supplier of breathalyzers that trained police officers in their use was found not to be engaged in a public function. But breath testing for alcohol has not been found to be a traditionally and exclusively public function, as prison drug testing was in *Amig*, and Microgenics Defendants' involvement in virtually all stages of drug testing surpasses the involvement of the *O'Boyle* defendant. *Id.* at 1314 (defendant alleged to provide breath tests and instructions, ensure proper training of police, and maintain digital evidence).

### 2. Policy or Custom

A § 1983 plaintiff must also allege that "action pursuant to official . . . *policy* of some nature caused a constitutional tort." *Rojas*, 924 F.2d at 408 (quoting *Monell v. Dep't of Social Serv. of the City of N.Y.*, 436 U.S. 658, 691 (1978)) (alteration in original).

Plaintiffs adequately plead that misrepresenting Indiko Plus's reliability was an official custom of its contractual relationship with DOCCS which caused their injuries. Microgenics Defendants insist that their actual policy was to require confirmatory testing, which DOCCS ignored. But Plaintiffs have alleged repeated instances in which Microgenics downplayed, ignored, or actively misled DOCCS personnel as to the need for confirmatory testing and evidence regarding Indiko Plus's inaccuracy, including in its redraft of the Directive, reassurances to DOCCS personnel in the summer of 2019, and testimony in disciplinary hearings.

### 3. Plaintiffs' Eighth Amendment Claim

This Court previously found that the Third Amended Complaint fails to allege a sufficiently serious injury to support an Eighth Amendment claim. Plaintiffs' Eighth Amendment claim is accordingly dismissed. *Steele-Warrick v. Microgenics Corp.*, No. 19-CV-6558-FB-VMS, 2023 WL 3081290, at *5-6 (E.D.N.Y. Apr. 26, 2023).

### 4. Plaintiffs' Fourteenth Amendment Claim

The Fourteenth Amendment's substantive component prohibits "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon v. Burch*, 494 U.S. 113, 125 (1990). To plead a substantive due process claim, a plaintiff must (1) "identify the constitutional right at stake" and (2) "demonstrate that the state action was so egregious, so

16

outrageous, that it may fairly be said to shock the contemporary conscience."

*Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021). This Court has already

found that Plaintiffs have alleged deprivation of a cognizable liberty interest—

freedom from arbitrary discipline while in state custody. *Steele-Warrick*, 2023 WL

3081290, at *7. The Court therefore proceeds to whether Plaintiffs allege

sufficiently conscience shocking behavior.

While negligent conduct is not conscience shocking, *Matzell v. Annucci*, 64

F.4th 425, 436 (2d Cir. 2023), "deliberately indifferent conduct" can be sufficient

in the prison context, "where actors have an opportunity to reflect and make

reasoned and rational decisions," *Pena v. DePrisco*, 432 F.3d 98, 113, 113 n.22 (2d

Cir. 2005); *Matzell*, 64 F.4th at 436.

In this Court's April 2023 Opinion adjudicating DOCCS Defendants'

motions to dismiss, Plaintiffs were found to have plausibly alleged that some, but

not all of the sued DOCCS personnel exhibited deliberate indifference that shocked

the judicial conscience. *See Steele-Warrick*, 2023 WL 3081290, at *8-11. Here, the

Court must evaluate whether the alleged conduct of Microgenics Defendants—two

corporations—was also conscience-shocking. Because substantive due process

protects against "government action that is conscience-shocking," *Empire Transit

Mix, Inc. v. Giuliani*, 37 F. Supp. 2d 331 (S.D.N.Y. 1999) (internal quotation

omitted), and this Court has held above that Microgenics Defendants' conduct is

alleged to be attributable to the state for the purposes of § 1983, their alleged actions can be evaluated under a conscience-shocking jurisprudence which is usually applied to government entities.

Plaintiffs allege that Microgenics Defendants repeatedly misrepresented to DOCCS whether Indiko Plus tests alone, without confirmatory testing, were sufficiently reliable to serve as the sole basis for inmate discipline. These allegations are sufficiently conscience-shocking—they entail deliberate indifference at the least and malicious disregard for inmate wellbeing in pursuit of profit at worst. Microgenics Defendants insist that because Plaintiffs also make out a claim for negligence, their allegations cannot also support a higher level of culpability such as deliberate indifference. But they provide no reasoning as to how conduct that meets a lower standard for culpability cannot also satisfy a higher one.

Microgenics Defendants also point to *Weidner v. City of New York*, No. 16 Cv. 6935 (RMB), 2017 WL 2984021, at *4 (S.D.N.Y. June 20, 2017), which rejected a claim concerning misrepresentations that fire suppression work at a jail was supervised by licensed professionals. *Weidner* is distinguishable for two reasons. First, the misrepresentation at issue was not alleged to endanger inmates— plaintiffs-contractors only alleged that it cost them a professional certification. Second, Microgenics Defendants are alleged to have engaged in more pervasive misrepresentation than the *Weidner* defendant. *See id.* at *2 (plaintiffs alleged that

18

corrections department lied "in stating that fire-suppression work" was "done by licensed fire-suppression contractors"). Plaintiffs have adequately alleged deprivation of a protected liberty interest owing to conscience-shocking behavior by Microgenics Defendants; their Fourteenth Amendment claim therefore stands.

**d. Plaintiffs' Class Allegations**

Microgenics Defendants also renew their motion to strike Plaintiffs' class allegations. Federal Rule of Civil Procedure 12(f) "authorizes a court" to strike from pleadings "any redundant, immaterial, impertinent, or scandalous matter," *Ricketts v. City of Hartford*, 74 F.3d 1397, 1415 (2d Cir. 1996) (internal quotation omitted), and Rule 23(c)(1)(A) requires that courts "decide whether to certify a class action at an early practicable time," *Talarico v. Port Auth. of New York & New Jersey*, 367 F. Supp. 3d 161, 166 (S.D.N.Y. 2019) (cleaned up). Accordingly, the Second Circuit allows motions to strike class allegations before a certification motion is filed. *Id.* These motions are "disfavored," as they can terminate claims "before plaintiffs . . . complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012).

Motions to strike must raise issues "separate and apart" from those to be "decided on a class certification motion," *id.*, (internal quotation omitted), or show, based on the face of the complaint, that certification is impossible regardless of

19

what surfaces in discovery, *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 52

(E.D.N.Y. 2017) (internal quotation omitted). For the reasons described below,

neither of these conditions obtain here, and Microgenics Defendants' motion to

strike must be denied.

Microgenics Defendants first argue that Plaintiffs' putative class lacks

commonality or predominance under Rules 23(a)(2) and (b)(3). Their request to

strike on these grounds is denied as premature, as these issues are properly

addressed at the certification stage. *Blagman v. Apple Inc.*, No. 12 CIV. 5453 ALC

JCF, 2013 WL 2181709, at *8 (S.D.N.Y. May 20, 2013) ("in this Circuit, a motion

to strike . . . is considered premature if the issues raised are the same ones that

would be [on] class certification under Rules 23(a) and 23(b)"). Microgenics

Defendants insist that striking is appropriate here because discovery has begun.

But it has not finished—and Second Circuit courts disfavor striking class

allegations "before discovery is completed." *Calibuso*, 893 F. Supp. 2d at 383, 392

n.6; *Blagman*, 2013 WL 2181709, at *7 (S.D.N.Y. May 20, 2013) ("the better

course is to deny such a motion because the shape and form of a class action

evolves only through the process of discovery" (internal quotation omitted)).

Second, Microgenics Defendants argue that the putative class includes

individuals who were not punished for false-positive urinalysis results, and who

therefore lack standing to sue. This issue is unfit for adjudication at the pleading

stage because the composition of the putative class is more effectively resolved on a certification motion, after discovery is complete. *Cf. Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) (at class certification stage, "no class may be certified that contains members lacking Article III standing").

## IV. CONCLUSION

Microgenics Defendants' motions to dismiss are granted with respect to Plaintiffs' Eighth Amendment claim and denied as to all other claims. Plaintiff's Eighth Amendment claim is dismissed with prejudice. Microgenics Defendants' motion to strike Plaintiffs' class allegations is denied.

**SO ORDERED.**

　　　　　　　　　　　　　　　　 _/S/ Frederic Block_____
　　　　　　　　　　　　　　　　 FREDERIC BLOCK
　　　　　　　　　　　　　　　　 Senior United States District Judge

Brooklyn, New York
June 12, 2023

21