EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbawm.com

August 7, 2024

*Via ECF*

Hon. Frederic Block
United States District Court for the New York Eastern District
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:   *Nadezda Steele-Warrick v. Microgenics Corporation et al.*
            No. 19-cv-6558 (FB) (VMS)

Dear Judge Block:

On behalf of Plaintiffs, we write pursuant to Individual Practice Rule 2.A, Fed. R. Civ. P. 26 & 37, and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), to respectfully request a pre-motion conference to address Plaintiffs' anticipated motions to exclude testimony offered by the expert witnesses retained by Defendants Microgenics Corporation and Thermo Fisher Scientific, Inc. (the "Corporate Defendants").

## *Background and Procedural History*

Pursuant to the expert discovery schedule in this case, Plaintiffs served three expert reports on February 29, 2024 from experts Heather Harris, Nathan Cortez, and Dr. Robert Swotinsky. None of the Defendants served an initial expert report. On April 29, 2024, the Corporate Defendants served seven "rebuttal" expert reports from five experts: two from Dr. Brent Kerger, one from Dr. Alexis Sauer-Budge, one from Dr. Nicholas Benetatos, two from Dr. Leo Kadehjian, and one from Dr. Alberto Gutierrez. All eight expert witnesses identified by the parties were deposed before the June 28, 2024 deadline to complete expert discovery.

## *Plaintiffs Will Move to Exclude Defendants' Experts' Legal Opinions*

"As a general rule an expert's testimony on issues of law is inadmissible." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227, 305 (E.D.N.Y. 2022); *see also United States v. Scop*, 846 F.2d 135, 139 (2d. Cir. 1988) (stating that Federal Rule of Evidence 704 "was not intended to allow experts to offer opinions embodying legal conclusions"). The Second Circuit has instructed courts to guard against "the admission of opinions which would merely tell the jury what result to reach." *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993) (first quoting Fed. R. Evid. 704; and then quoting Fed. R. Evid. 704 (Advisory Committee Notes)). In addition, "[e]xpert testimony may not usurp the province of the judge to instruct on the law." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013).

Several opinions in the Corporate Defendants' experts' reports improperly assert legal conclusions. These include, but are not limited to, opinions that the immunoassay drug tests used by DOCCS were sufficiently accurate to "satisfy due process" under *Peranzo v. Coughlin* (Sauer-Budge Report at 4-5; *see also* Gutierrez Report at 8-9); opinions that DOCCS drug testing

E<span style="font-variant:small-caps">mery</span> C<span style="font-variant:small-caps">elli</span> B<span style="font-variant:small-caps">rinckerhoff</span> A<span style="font-variant:small-caps">bady</span> W<span style="font-variant:small-caps">ard</span> & M<span style="font-variant:small-caps">aazel</span> LLP
Page 2

policy "was sufficiently accurate to fulfill due process requirements in prison discipline," (Kadehjian Harris rebuttal at 10); and opinions about the difference in the burden of proof required for criminal prosecutions as opposed to prison disciplinary actions (Kadehjian Harris rebuttal at 9). These opinions, and all others in which the Corporate Defendants' experts improperly assert legal conclusions, must be excluded. Whether the drug testing regime in place at DOCCS during the relevant time period violated Plaintiffs' due process rights is a question for the jury, not the Corporate Defendants' experts.

### *Plaintiffs Will Move To Exclude Defendants' Experts' Opinions that Do Not Satisfy the Requirements of Rule 702 and* Daubert

The admissibility of an expert's testimony is governed by Federal Rule of Evidence 702. As the Supreme Court explained in *Daubert*, it is the District Court's responsibility to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. To determine whether expert testimony is admissible, "the court must consider, whether (1) the witness is qualified as an expert to testify as to a particular matter; (2) the witness has based his opinion upon reliable data and methodology; (3) the expert's testimony on the particular subject is relevant because it will assist the trier of fact; and (4) pursuant to Rule 403 the testimony's 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 425 (E.D.N.Y. 2011) (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)).

The Corporate Defendants' experts offered testimony that does not satisfy the requirements of Rule 702. For example, Dr. Gutierrez opined that "the use of the Buprenorphine II assay in the DOCCS program falls within what the FDA contemplated when reviewing the assay's label." (Gutierrez at 19) But Dr. Gutierrez testified at his deposition that the FDA exercises "enforcement discretion" with regard to the use of immunoassay drug tests in the forensic context and therefore does not offer any opinion as to whether and under what conditions an immunoassay test can be used in the prison setting (Gutierrez Dep. Tr. at 146:9-150:4). Dr. Gutierrez, who spent nearly his entire career at the FDA and has no experience with drug testing programs in a prison setting, is not qualified to offer this opinion, nor is it based on any reliable data or methodology.

Similarly, Dr. Gutierrez offered the opinion that the Corporate Defendants "reasonably supplied and supports it products for use the DOCCS testing program [sic]." Yet he testified that he did not review any materials regarding how the Corporate Defendants marketed or supported the products they provided to DOCCS, and this opinion was based solely on his "brief[]" review of the contract between DOCCS and the Corporate Defendants. (Gutierrez Dep. Tr. at 152:12-153:25) As Dr. Gutierrez's opinion regarding the reasonableness of the Corporate Defendants' provision of materials for and involvement in DOCCS's drug testing program is not based on any reliable data or methodology, it must be excluded.

### *Plaintiffs Will Move To Exclude Defendants' Experts' Opinions That Seek To Narrate the Facts*

Experts cannot "become a vehicle for factual narrative." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) (citations omitted). "Acting simply as a narrator of the facts"

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 3

fails the basic requirements of Rule 702 and *Daubert*, as it "does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology." *Id.* (citation omitted). "[N]arration of facts of the case may easily invade the province of the jury, providing a separate basis for exclusion." *Id.*

The Corporate Defendants' experts offered testimony about the facts of the case that fail to satisfy Rule 702 and *Daubert*, and also invade the province of the jury. For example, Dr. Sauer-Budge offered an opinion regarding the services that DOCCS asked the Corporate Defendants to provide, stating "Microgenics was not asked to evaluate DOCCS procedures or to provide consulting services as to how to best implement a drugs of abuse testing program. Instead, DOCCS sought a vendor to provide instruments and tests capable of meeting or exceeding the accuracy for the tests that they were currently using." (Sauer-Budge Report at 4). Dr. Sauer-Budge has no special expertise regarding the interactions between DOCCS and the Corporate Defendants in connection with the contract, nor should she be permitted to offer this opinion about the facts of the case to the jury.

Similarly, Dr. Kadehjian offered an opinion as to the division of responsibility between DOCCS and the Corporate Defendants, another factual issue about which he has no expertise, asserting: "For an agency like DOCCS, it is under their purview to determine what degree of accuracy and reliability fulfill their due process requirements." (Kadehjian at 9). Dr. Kerger offered analogous factual testimony not based on his expertise or traceable to a reliable methodology when he stated: "I understand that immunoassay manufacturers like Microgenics or Siemens/Immunalysis have no authority to change the process or procedures contained in [DOCCS] Directive 4937." (Kerger Report at 9). This and other factual testimony offered by the Corporate Defendants improperly invade the province of the jury and must be excluded.

***Plaintiffs Will Move To Exclude Defendants' Experts' Opinions Which Are Based on Information Not Available to Plaintiffs***

Federal Rule of Civil Procedure 26 requires experts' written reports to contain, among other things, "the facts or data considered by the witness in forming" their opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). If an expert fails to disclose information as required by Rule 26, it may be excluded at trial unless the failure to disclose "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Jinghong Song v. Yao Brothers Group LP*, No. 10 Civ. 4157, 2012 WL 1557372, at *1–2 (S.D.N.Y. May 2, 2012) (rejecting expert report that failed to "adequately identify the 'facts or data' considered by the witness in forming his opinions"); *Loyd v. United States*, No. 08 Civ. 9016, 2011 WL 1327043, at *2 n. 4 (S.D.N.Y. March 31, 2011) (precluding expert witness where written report failed to provide "the basis for [the expert's] opinion" and "the data considered by [the expert] in forming his opinion").

Several of the Corporate Defendants' experts offered opinions based on information that was never provided to Plaintiffs' experts. Specifically, they provided opinions regarding the performance of the Corporate Defendants' immunoassay drug testing products based on clinical studies and the Corporate Defendants' "compiled internal data." (Gutierrez at 19; *see* Sauer-Budge at 4). Without this data, Plaintiffs and their experts cannot examine those studies and evaluate the Corporate Defendants' experts' claims purportedly based on the data contained therein. As the Corporate Defendants' experts' failure to disclose this information is neither substantially justified nor harmless, their opinions based on the data should be excluded.

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 4

        Respectfully submitted,

        /s/
        Matthew D. Brinckerhoff
        Samuel Shapiro
        Emily K. Wanger
        Eric Abrams

c.    All counsel of record, *via ECF*